No. 24-7746

# In the United States Court of Appeals
## for the Ninth Circuit

NATIONAL COALITION FOR MEN, A 501(C)(3) NON-PROFIT ORGANIZATION, ET. AL.,

*Plaintiff-Appellants,*

v.

SELECTIVE SERVICE SYSTEM, JOEL C. SPANGENBERG, AS ACTING DIRECTOR OF SELECTIVE SERVICE SYSTEM, DOES, 1-50, INCLUSIVE,

*Defendant-Appellees.*

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:24-cv-04016-AB-E
Hon. Andre' Birotte Jr.

## APPELLANT'S BRIEF

Nadine Lewis, Esq., SBN 179979
NADINE LEWIS, ATTORNEY AT LAW
1305 Pico Boulevard
Santa Monica, California 90405
Office Telephone: 424.228.5109
Email: nadine@nadine.esq

*Attorney for Plaintiffs - Appellants*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................i

TABLE OF AUTHORITIES ......................................................ii

CERTIFICATE OF INTERESTED PARTIES ..........................1

CORPORATE DISCLOSURE STATEMENT .........................3

APPELLANT'S BRIEF ...........................................................4

   STATEMENT REGARDING ORAL ARGUMENT ............4

   INTRODUCTION ...........................................................4

   JURISDICTIONAL STATEMENT ..................................9

   STANDARD OF REVIEW ...............................................9

   ISSUE PRESENTED .....................................................10

   STATEMENT OF THE CASE ........................................11

     I.  Statutory and Regulatory Background .......................11

     II.  Factual Background and Prior Proceedings ................15

   SUMMARY OF THE ARGUMENT ................................16

   ARGUMENT .................................................................18

     I.  The Court Should Apply Heightened Scrutiny...........18

     II.  The Act's Male-Only Registration Requirement Is Discrimination On The Basis Of Sex .........................21

   CONCLUSION ..............................................................33

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ..................................................34

CERTIFICATE OF COMPLIANCE ......................................35

CERTIFICATE OF SERVICE ..............................................36

ADDENDUM .......................................................................37

# Table of Authorities

Page

**Cases:**

*Agyeman v. I.N.S.*
296 F.3d 871 (9th Cir. 2002) ............................................................ 10

*Angelucci v. Century Supper Club*
41 Cal. 4th 160 (2007) ...................................................................... 15

*Craig v. Boren*
429 U.S. 190 (1976) ........................................................................... 19

*Freeman v. DirecTV, Inc.*
457 F.3d 1001 (9th Cir. 2006) .......................................................... 10

*Fullilove v. Klutznick*
448 U.S. 448 (1980) ........................................................................... 29

*Kirchberg v. Feenstra*
450 U.S. 455 (1981) ........................................................................... 19

*Mai v. U.S.*
952 F.3d 1106 (9th Cir. 2020) ............................................................ 9

*Pers. Adm'r of Massachusetts v. Feeney*
442 U.S. 256 (1979) ........................................................................... 19

*Robles v. Domino's Pizza, LLC*
913 F.3d 898 (9th Cir. 2019) .............................................................. 9

*Rostker v Goldberg*
453 U.S. 57 (1981) ............................................... 12, 17, 19, 22, 28, 33

*Stilwell v. Smith & Nephew, Inc.*
482 F.3d 1187 (9th Cir. 2007) .......................................................... 10

*U.S. v. Bolanos-Hernandez*
492 F.3d 1140 (9th Cir. 2007) .......................................................... 10

*U.S. v. Kelly*
874 F.3d 1037 (9th Cir. 2017) ............................................................ 9

*U.S. v. Mayea-Pulido, 946 F.3d 1055, 1059 (9th Cir.) cert.
denied*
141 S. Ct. 101 (2020) .......................................................................... 9

ii

*U.S. v. Mohamud*
  843 F.3d 420 (9th Cir. 2016) ............................................................. 10

*U.S. v. Virginia*
  518 U.S. 515 (1996) ......................................................................... 18

*U.S. v. Vongxay*
  594 F.3d 1111 (9th Cir. 2010) ......................................................... 10

*U.S. v. Waites*
  198 F.3d 1123 (9th Cir. 2000) ......................................................... 10

*Vill. of Willowbrook v. Olech*
  528 U.S. 562 (2000) ......................................................................... 16

*Wengler v. Druggist Mut. Ins. Co.*
  446 U.S. 142 (1980) ......................................................................... 19

*Woods v. Horton*
  167 Cal. App. 4th 658 (2007) ......................................................... 15

## Statutes:

28 U.S.C. § 1291 ................................................................................. 9

50 U.S.C. § 453 ................................................................................. 21

50 U.S.C. § 462 ................................................................................. 21

50 U.S.C. § 3801 ............................................................................... 20

50 U.S.C. § 3802 ......................................................................... 11, 12

50 U.S.C. § 3809 ............................................................................... 12

## Constitutions:

U.S. Const., 5th Amend. ............................................. 12, 18, 23, 24, 29

U.S. Const., 14th Amend. ................................................................. 16

## Other:

130 Stat. 2130 ......................................................................... 7, 14, 22

130 Stat. 2135 ......................................................................... 7, 14, 22

Gen. Michael Hayden et al. Amicus Curiae, NCFM, et al. v
  Selective Service System, et al. (2021) ................................. 13, 25, 30

Memorandum for Secretaries of the Military departments
  Acting Under Secretary of Defends for Personnel and
  Readiness 1 (Jan. 24, 2018) ............................................................ 13

National Defense Authorization Act for Fiscal Year 2017,
  § 551 ........................................................................................ 7, 14, 22

National Defense Authorization Act for Fiscal Year 2017 § 555
  ................................................................................................... 7, 14, 22

## Certificate of Interested Parties

The undersigned counsel of record certifies that the following listed persons and entities as described in the FRP Rule 26(a)(1) and (2), and 9th Circuit Rule 21–3 that have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifying or recusal.

Plaintiffs – Appellants:

National Coalition for Men

Tyler McNamara

Nicholas Milillo

Nicolas Mendiola

Conor Mckiernan

Jordan Falcon

Defendants – Appellees

Selective Service System

Joel C. Spangenberg

Counsel for Plaintiffs:

Nadine Lewis, counsel for Plaintiffs

Counsel for Defendants;

Andrew E. Carmichael

Joanne Schwartz

Michael J. Gerardi

Simon Christopher Brewer

Nadine Lewis, Attorney at Law

Respectfully submitted,

Dated: February 3, 2025          By: /s/ Nadine Lewis

Nadine Lewis

*Attorney for Plaintiffs - Appellants*

## Corporate Disclosure Statement

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that Plaintiff and Appellant National Coalition for Men, is a California 501(c)(3) not-for profit corporation with its principal place of business in San Diego County, California.

Nadine Lewis, Attorney at Law

Respectfully submitted,

Dated: February 3, 2025          By: /s/ Nadine Lewis

Nadine Lewis

*Attorney for Plaintiffs - Appellants*

## Appellant's Brief

Plaintiffs and Appellants, National Coalition for Men, Tyler McNamara, Nicholas Milillo, Nicolas Mendiola, Conor Mckiernan, and Jordan Falcon, submit this Opening Brief pursuant to Rule 28(a) of the Federal Rules of Appellate Procedure and Rule 28–1 of this Ninth Circuit.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully an opportunity for oral argument before the Court and believe that oral argument would assist the Court in resolving this important constitutional issue.

## INTRODUCTION

The National Coalition for Men (hereinafter referred to as "NCFM") along with the draft-age individual plaintiffs, assert that registration under the Military Selective Service Act (hereinafter referred to as "MSSA" or "the Act") for the Selective Service System is discrimination on the basis of sex and is forbidden under the Equal Protection Clause of the United States Constitution.

The Act requires male citizens and immigrants between the ages of 18 and 26 to register with the Selective Service System to facilitate their conscription should the President of the United States of America initiate the military draft.

*The Act does not require women to register.*

Male-only registration burdens an entire class of citizens without regard to the fact that they may lose life, liberty, or limb if called to war; all the while diminishing the capabilities of an entire class of citizens, draft-age women, who proudly serve in all military positions, from the fields of combat to four-star generals.

The Act also meets out harsh punishments for young men, including prolonged jail sentences and steep fines for failure to register; these penalties may also be imposed upon third parties who assist in evasion of registration. Failure to register can also result in the loss of federal benefits, state and federal jobs, security clearance and even driver's license issuance or renewal; failure to register by age 26 can result in the loss of many of these benefits permanently. [2-ER-84].

On April 4, 2013, Plaintiff, NCFM, filed an action similar to the present matter in the Central District Court of California. Subsequently, the Central District Court of California transferred the case to the Southern District Court of Texas, Houston Division, where one of the prior plaintiffs, whom the Court found had standing, resided. [NCFM v Selective Service System Case No. 4:16-cv-03362, ECF-1].

In the prior action, NCFM filed a Motion for Summary Judgment which was granted by the Southern District of Texas on February 22, 2019 [NCFM v Selective Service System Case No. 4:16-cv-03362 ECF-73

& 87, 88: also see RJN-6 & 7]. On August 13, 2020, the United States Court of Appeals for the Fifth Circuit reversed the Southern District and dismissed the case. [Case No. 19–20272 ECF:100 also see RJN-8].

On January 8, 2021, NCFM filed a Petition for a Writ of Certiorari with the United States Supreme Court. The National Organization for Women, the Modern Military Associated of America, General Michael Hayden, and **_nine_** other military officers filed Amicus Briefs in support of NCFM's Petition. [RJN-2].

On June 7, 2021, the Supreme Court denied the Petition. Justice Sotomayor cited the fact that Congress would be considering the issue in its next defense bill. Justice Sotomayor stated:

> "But at least for now, the Court's longstanding deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." [Case No. 19–20272 ECF:101 Pg. 3; also see RJN-1].

*The very next month*, Congress weighed in on the matter while drafting its annual defense bill. In July 2021, The Senate Armed Services Committee voted 21–5 to add women to the draft registration system. The House Armed Service Committee approved the change in September in a 35–24 vote. The committee approval came after a congressionally mandated commission in 2020 recommended draft registration be expanded to include women, calling it a "necessary and fair step." [2-ER-97].

6

A small group of six senators were adamantly opposed to gender-neutral registration and threatened to vote against the defense bill if the final draft included the provision to, in their words, *"draft our daughters."* [2-ER-97]. The *'daughters'* comment makes the case that Congress failed to end sex-based discrimination arising from the Act for arbitrary reasons, unrelated to any legitimate government interest.

The United States government is composed of a system of checks and balances, the judicial branch has historically been a check on arbitrary actions of Congress. The *"draft our daughters"* comment is the quintessential definition of 'arbitrary' in that it appears to be based upon random biases or personal whim, rather than rational or measured thought related to a legitimate government interest. Nor is the comment based upon the various studies and memorandum which Congress itself authorized, *at great expense*; all of which concluded that the draft should include all draft-age citizens and immigrants without regard to their sex.

In 2016, Congress created the National Commission on Military, National, and Public Service (NCMNPS) and tasked it with studying whether Selective Service registration should be conducted "regardless of sex." National Defense Authorization Act for Fiscal Year 2017, §§551(a), 555(c)(2)(A), 130 Stat. 2130, 2135.

It has been five years since March of 2020 when the Commission released its final report, in which it recommended "eliminat[ing] male-only registration." Inspired to Serve: The Final Report of the NCMNPS

[NCMNPS 111]. Among other things, the Commission found that "[m]ale-only registration sends a message to women not only that they are not vital to the defense of the country but also that they are not expected to participate in defending it." Id., at 118.

> "Ultimately, the Commission determined the time is right to require women to register with Selective Service. This policy change represents a necessary—and overdue—step that is in the best interests of the United States. Requiring all Americans to register with the Selective Service System is needed to ensure that during a national emergency, the Government would be able to call on the talents of all Americans and demonstrate the resolve of a united country. The next time America must turn to a draft, it will need to include everyone who is capable and qualified. It would be harmful to the Nation's security to leave out the skills and talents of half of the U.S. population." [NCMNPS Page 122].

Each year since 2021 when the U.S. Supreme Court denied NCFM's Petition for Writ of Certiorari, Congress had the opportunity to act when they passed the annual defense bill. Now, four years later, Congress has yet to enact gender-neutral registration, all based upon the arbitrary comments of six senators who perpetuate archaic stereotypes of women serving in the military, diminishing and minimizing those enlisted women who proudly serve in every capacity.

The National Coalition for Men along with the draft-age individual plaintiffs, Tyler McNamara, Nicholas Milillo, Nicolas Mendiola, Conor

Mckiernan, and Jordan Falcon, seek equality under the MSSA and for this Court to end the Act's unconstitutional discrimination on the basis of sex.

## JURISDICTIONAL STATEMENT

Plaintiffs sued a federal government agency and its director, asserting that the federal statute requiring men to register for the draft through the Selective Service System is unconstitutional. [2-ER-89]. Plaintiffs invoked the district court's jurisdiction under 28 U.S. Code § 1331 and 28 U.S. Code § 1343 (3) & (4). On November 20, 2024, the district court entered an Order Granting Defendant's 12(b)(6) Motion to Dismiss (in part). [1-ER-3–12]. The Judgment was entered on December 9, 2024. [1-ER-2]. Plaintiffs filed a timely notice of appeal on December 19, 2024.[2-ER-14–31] This Court has jurisdiction under 28 U.S.C. section 1291.

## STANDARD OF REVIEW

Plaintiff challenges the constitutionality of statutes in the present action to be reviewed de novo in the Ninth Circuit. *See Mai v. U.S.*, 952 F.3d 1106, 1112 (9th Cir. 2020)); *U.S. v. Mayea-Pulido, 946 F.3d 1055, 1059 (9th Cir.) cert. denied*, 141 S. Ct. 101 (2020); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019) (stating "the constitutionality of a statute or regulation is a question of law" reviewed de novo); *U.S. v.*

9

*Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017); *U.S. v. Mohamud*, 843 F.3d 420, 432 (9th Cir. 2016); *U.S. v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010); *U.S. v. Bolanos-Hernandez*, 492 F.3d 1140, 1141 (9th Cir. 2007). The appellate court must consider the matter anew, as if no decision previously had been rendered. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006). Review is "independent," *see Agyeman v. I.N.S.*, 296 F.3d 871, 876 (9th Cir. 2002), or "plenary," *see Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1193 (9th Cir. 2007); *U.S. v. Waites*, 198 F.3d 1123, 1126 (9th Cir. 2000).

## ISSUE PRESENTED

Plaintiffs are male citizens of the United States who are draft age, who did in fact register for the draft. [2-ER-92–93]. The Act requires all males to register with the Selective Service System when they turn 18. The Act does not require female citizens to register. There are harsh penalties if men fail to register, some of which may last a lifetime. [2-ER-49–50].

In their Motion to Dismiss, Defendants argued that the district Court was bound to follow the Supreme Court where they upheld the MSSA in, where the Court rejected a claim that Congress unconstitutionally excluded women from the registration requirement because, at that time, women were excluded from combat. [2-ER-57–82].

10

Plaintiffs assert that the facts in *Rostker* do not reflect the present reality of enlisted female servicemembers who serve in all branches of the U.S. military, including in combat roles. Since 2015, the rationale behind *Rostker* has been obsolete, as women serve in every capacity from the fields of combat, in aircraft, at sea and four-star generals.

Plaintiffs raise a question that the Court did not address in *Rostker* in 1981: In light of the DoD's 2013 decision to remove gender-based combat restrictions, making enlisted men and women similarly situated, does the Act's male-only registration requirement still serve a legitimate or significant government interest?

Plaintiffs assert that the Act's male-only registration requirement is discrimination on the basis of sex without a legitimate government interest and district Court erred in granting Defendants' 12(b)(6) Motion to Dismiss. [1-ER-2 & 3].[1]

## STATEMENT OF THE CASE

### I.  Statutory and Regulatory Background

The Act requires male citizens and immigrants between the ages of 18 and 26 to register with the Selective Service System to facilitate their conscription if the President initiates the military draft. 50 U.S.C.

---

[1]  Counsel for Appellants and the Appellants would like to thank law clerk Spenscer Greenberg for her invaluable service and dedication to this matter in general and for her assistance in writing the Opening Brief during a busy time in her law school academic school year.

§§ 3802(a), 3809(a)(1). By registering, a young man remains eligible for federal jobs, state-based student aid in thirty-one states, federally funded job training, and U.S. citizenship for males who are immigrants.

If a young man fails to register, he will face harsh penalties, some of which may last a lifetime. Failure to register is a felony punishable by a fine of up to $250,000 and/or five (5) years imprisonment. These penalties are not limited to the individual who fails to register and may extend to a person who knowingly counsels, aids, or abets another to fail to comply with the registration requirement. Young men must register with the Selective Service System to be eligible for most federal employment, some state employment, security clearance for contractors, and job training under the Workforce Innovation and Opportunity Act.

Selective Service statistics suggest that more than one million men have been denied some government benefit because they failed to register. If the denial of the benefit occurs after the male turns twenty-six, there is no possibility to cure his non-compliance, and he will be denied significant governmental benefits for life.

The Act does not require women to register. 50 U.S.C. § 3802(a).

In *Rostker v Goldberg*, 453 U.S. 57, male plaintiffs asserted that sex discrimination in the Selective Service System violated their rights to Equal Protection under the Fifth Amendment to the United States Constitution. In a sharply divided decision, with a vigorous dissent written by Justice Thurgood Marshall, the majority of the Justices ruled against

the male plaintiffs on the basis that women were excluded from combat, and therefore, men and women were not similarly situated; finding that there was no discrimination on the basis of sex under the statute.

In 2013, under the Obama administration, Secretary of Defense Leon E. Panetta and Chairman of the Joint Chiefs of Staff, Martin E. Dempsey, issued a Memorandum that officially rescinded the 1994 ban on women in combat. Secretary Panetta firmly stated, *"Success in our military base solely on ability, qualifications, and performance, is consistent with our values and enhances military readiness."* (Gen. Michael Hayden et al. Amicus Curiae, p. 7, NCFM, et al. v Selective Service System, et al. (2021)) (Leon E. Panetta, Sec'y of Def., and Martin E. Dempsey, Chairman of the Joint Chiefs of Staff, Memorandum for Secretaries of the Military departments Acting Under Secretary of Defends for Personnel and Readiness 1 (Jan. 24, 2018), https://dod.defense.gov/Portals/1/Documents/WISRJointMemo.pdf**).**

The 2013 Memorandum gave the military until May 15, 2013, to submit "detailed plans for the implementation of this directive" and directed that integration of women into combat positions be completed "as expeditiously as possible" and no later than January 1, 2016.

As the 2013 Memorandum notes, many changes occurred between the 1981 *Rostker* decision and 2013. In 2012, the military opened over 14,000 positions previously closed to women; by 2013, women served alongside men in Iraq and Afghanistan and were exposed to hostile enemy action.

In 2016, Congress authorized the National Commission on Military, National, and Public Service ("NCMNPS") to study whether registration should be conducted "regardless of sex." National Defense Authorization Act ("NDAA") for Fiscal Year 2017, §§551(a), 555(c)(2)(A), 130 Stat. 2130, 2135. In March of 2020, NCMNPS published their final report in which it recommended "eliminat[ing] male-only registration." (NCMNPS Final Report, 2020, P. 111).

The Final Report was clear in its findings and recommendations that the time is now to enact a gender-neutral registration, ending disparate treatment of the sexes:

> "Findings and Recommendation:
>
> After careful consideration of a diverse range of perspectives, the Commission determined that the time is right to extend the registration requirement to all Americans, men and women. Doing so promotes the national security of the United States by allowing the President to leverage the full range of talent and skills available during a national mobilization. It also reaffirms the Nation's fundamental belief in a common defense, and signals that both men and women are valued for their contributions in defending the Nation. The current disparate treatment of women unacceptably excludes women from a fundamental civic obligation and reinforces gender stereotypes about the role of women, undermining national security." [NCMNPS Final Report, 2020, P. 115).

## II.  Factual Background and Prior Proceedings

Appellants Tyler McNamara, Conor McKiernan, Nicholas Milillo, Nicolas Mendiola, and Jordan Falcon are all cisgender males and were required by law to register for the draft under the Act.

NCFM is a non-profit, 501(c)(3) educational and civil rights organization established under the laws of the State of California and of the United States with male members ages 18–25 years old. NCFM was established in 1976 to examine how sex discrimination affects males in areas such as child custody, divorce, domestic violence services, military conscription, paternity laws, criminal sentencing, public benefits, false accusations, and education. NCFM represented battered men in the landmark case of *Woods v. Horton*, 167 Cal. App. 4th 658 (2007), which ruled that statutes excluding male victims from state-funded services are unconstitutional; NCFM help enact legislation to protect men from paternity fraud, and; NCFM members were the prevailing appellants and attorney in the landmark California Supreme Court case of *Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007), holding that men and others against whom businesses discriminate need not demand equal treatment to have standing to sue under the Unruh Act.

On May 14, 2024, Plaintiffs filed a Complaint against the government for Injunctive and Declaratory Relief. [2-ER-83]. On August 2, 2024, Appellees filed a 12(b)(1) and 12(b)(6) Motion to Dismiss [2-ER-57] and

on November 20, 2024, the district court entered an Order denying Appellees' 12(b)(1) Motion to Dismiss and granting Appellees' 12(b)(6) Motion to Dismiss. [1-ER-3]. Judgment was entered on December 9, 2024. [1-ER-2]

Plaintiffs filed a timely notice of appeal on December 19, 2024. [2-ER-14].[2]

## SUMMARY OF THE ARGUMENT

Male-only registration under the Act is discrimination on the basis of sex.

The Equal Protection Clause, part of the 14th Amendment to the United States Constitution was passed in 1868 to combat discrimination and requires the government to have a valid reason for treating people differently. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The MSSA is a discriminatory law that burdens an entire class of citizens, draft-age men, to inferior legal status (subject to harsh and often lifetime punishments) without regard to the fact that they may poten-

---

[2] There was a previous and 'mirror' case filed by NCFM in 2013, please see the "Introduction" and Motion to Take Judicial Notice filed concurrently with Appellants Opening Brief for the relevant pleadings.

16

tially lose life, liberty, or limb if called to war; all the while diminishing the abundant capabilities of an entire class of citizens, draft-age women, who currently serve in all military positions, including combat roles.

Limiting registration to men is based upon antiquated stereotypes of the capacity of women to serve and fully participate in military and civic life. The ban assumes women are unsuitable for military service notwithstanding their own individual capabilities.

Women currently serve in every capacity in the U.S. military from the fields of combat to four-star generals. The Act is discrimination on the basis of sex without any legitimate or important government interest. The limitation on registration to male citizens sanctifies these archaic biases and encapsulates them in federal law.

The District Court's erred when it granted Defendants' Motion to Dismiss, as Plaintiffs ask a question never addressed by the Court in *Rostker:* In a post-*Rostker* world, where the in 2913, DoD lifted all gender-based restrictions in combat, does the MSSA male-only registration requirement serve a legitimate or important government interest or is it as Justice Thurgood Marshall, stated in his dissent in *Rostker "one of the most potent remaining expressions of ancient canards about the proper role of women ." Rostker v Goldberg*, 453 U.S. 57.

## ARGUMENT

## I. The Court Should Apply Heightened Scrutiny

People in the United States are protected by the fundamental Constitutional right of equal protection, and that right should be protected by the well-established standard of heightened scrutiny. The present matter relates to a government action which is subject to heightened scrutiny; here the burden of proof lies with the government to justify why a particular classification is necessary and appropriate. This high level of scrutiny must also be applied whenever a "fundamental right" is being threatened by a law. Strict scrutiny requires the *government* to prove that: there is a *compelling state interest* behind the challenged policy, and the law or regulation is *narrowly tailored* to achieve its result.

The United States Supreme Court has held:

> Discrimination itself, by perpetuating 'archaic and stereotypic notions' . . . can cause serious noneconomic injuries to those persons who are personally denied equal treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The Fifth Amendment to the United States Constitution prohibits the Federal Government from discriminating on the basis of sex. "Parties who seek to defend sex-based government action must demonstrate an 'exceedingly persuasive justification" for that action.'" *U.S. v. Virginia*, 518 U.S. 515, 531 (1996). Sex discrimination must be examined under

the "heightened" scrutiny mandated by *Craig v. Boren*, 429 U.S. 190 (1976). Under this test, a sex-based classification cannot withstand constitutional challenge unless it is substantially related to an important governmental objective. *Kirchberg v. Feenstra*, 450 U.S. 455, 459, 459–460 (1981). The party defending the classification carries the burden of demonstrating both the importance of the governmental objective it serves and the substantial relationship between the discriminatory means and the asserted end. *Wengler v. Druggist Mut. Ins. Co.*, 446 U.S. 142, 151 (1980). Thus, the Government must show the sex-based classification bears "a close and substantial relationship to [the achievement of] important governmental objectives." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 273 (1979).

The Court in *Rostker* upheld the heightened scrutiny standard stating:

> The Solicitor General argues, largely on the basis of the foregoing cases emphasizing the deference due Congress in the area of military affairs and national security, that this Court should scrutinize the MSSA only to determine if the distinction drawn between men and women bears a rational relation to some legitimate Government purpose and should not examine the Act under the heightened scrutiny with which we have approached gender-based discrimination. We do not think that the substantive guarantee of due process or certainty in the law will be advanced by any further "refinement" in the applicable tests as suggested by the Government. *Rostker*, 453 U.S. at 69–70 (citations omitted.)

In a post-2015 military world where enlisted women serve alongside men in every capacity, there is no relationship to the male-only registration requirement and an important government objective. Pursuant to the statutory framework of the Act, the United States Congress appears to disregard the fundamental principle that the Selective Service System, as established by the Military Selective Service Act, 50 U.S.C. § 3801 et seq., has maintained selectivity as its defining characteristic since its inception. As such, the draft has always been **selective;** not every person called upon to serve, will serve in a combat role, just as not every person who is called to serve will be drafted; there are many deferments and exemptions that are equally available to all people.

Even if women were still banned from combat, the Act's male-only registration requirement would still be a detriment to national security as *"nearly 80 percent of today's military positions are classified as noncombat."* [NCMNPS Final Report, 2020, P. 115]. Since the ban on women in combat was lifted in 2013; there is no rational basis for male-only registration. It is not the decision to register men that must be shown to be necessary to further the goal of raising an army, but the decision to register *only* men.[3]

---

[3]  Counsel and NCFM would like to dedicate this brief to the memory of Marc Angelucci, Esq., who was sadly taken from this earth on July 11, 2020, when he was fatally shot at his front door. NCFM continues the good work Mr. Angelucci began when he filed the first NCFM v Selective Service case in 2013.

The NCMNPS final Report itself states that**,** *"The current disparate treatment of women unacceptably excludes women from a fundamental civic obligation and reinforces gender stereotypes about the role of women, undermining national security."* [NCMNPS Final Report, 2020, P. 115]. Failing to enact a gender-neutral registration does not serve any important government interest, it is simply discrimination on the basis of sex and this Court should apply heightened scrutiny in its analysis of this matter.

## II. The Act's Male-Only Registration Requirement Is Discrimination On The Basis Of Sex

Plaintiffs, Tyler McNamara, Nicholas Milillo, Nicolas Mendiola, Conor Mckiernan, and Jordan Falcon, are draft-age men who registered with the Selective Service System in accordance with the Act. Under the MSSA, all male U.S. citizens and all male immigrant non-citizens between the ages of 18 and 26-years-old must register with the Selective Service System within thirty days of their 18th birthday. 50 U.S.C. § 453(a). After they register, men must notify the government within ten days of any changes to any information on the registration card. Failure to comply can subject them to five years in prison, a $10,000 fine, and denial of federal employment or student aid. 50 U.S.C. section 462(a). These penalties are not limited to the individual who fails to register and may extend to a person who knowingly counsels, aids, or abets another

to fail to comply with the registration requirement. The U.S. Citizenship and Immigration Services makes registration with the Selective Service System a condition for U.S. citizenship if the man first arrived in the United States before his 26th birthday. Failure to register may cause up to a 5-year delay of U.S. citizenship proceedings for immigrants.

*The Act does not require women to register.*

The District Court granted Defendant's Motion to Dismiss in part, finding that Plaintiffs claims are precluded by *Rostker.* [1-ER-3]. In *Rostker*, 453 U.S. 57, the Court upheld the Act's gender-based registration requirement against an equal protection challenge, citing the fact that women were "excluded from combat" roles and hence "would not be needed in the event of a draft." *Id.* at 77.

In the 44 years post-*Rostker,* the roles of women in our military have completely changed. As stated above, In 2016, Congress created the National Commission on Military, National, and Public Service (NCM-NPS) and tasked it with studying whether Selective Service registration should be conducted *"regardless of sex."* National Defense Authorization Act for Fiscal Year 2017, §§551(a), 555(c)(2)(A), 130 Stat. 2130, 2135. *Five years ago*, on March 25, 2020, the Commission released its final report, in which it recommended "eliminat[ing] male-only registration." Inspired to Serve: The Final Report of the [NCMNPS Final Report Page 111]. Among other things, the Commission found that "[m]ale-only regis-

tration sends a message to women not only that they are not vital to the defense of the country but also that they are not expected to participate in defending it." Id., at 118.

The Commission recommended that Congress clarify the purpose of the Selective Service by revising the MSSA purpose statement to read: "The Congress hereby declares that an adequate military strength must be achieved and maintained to insure the security of this Nation by insuring adequate personnel with the requisite capabilities to meet the mobilization needs of DoD during a national emergency and not solely to provide combat replacements." [NCMNPS Final Report, 2020, P. 94]. Even if women were presently banned from combat, the Report unequivocally finds that a gender-neutral draft is needed to assure that the right people will be drafted in a national emergency. Not every person drafted will see combat, this is increasingly true in our modern military world where technology plays a major role in military strategy.

All branches of the military opened over 14,000 positions previously closed to Women in February 2012; by the next year in 2013, women had served alongside men in combat roles in Iraq and Afghanistan. The DoD rescinded the ban on women in combat in 2013 and directed that integration of women into combat positions be completed "as expeditiously as possible" and no later than January 1, 2016.

Plaintiffs assert that the exclusion of women from registration under the Act and the requirement that only men register violates the Fifth

Amendment of the United States Constitution. This case seeks to end Defendants from discriminating on the basis of sex in a post-2013 world where women serve in combat roles.

Accordingly, the rationale in *Rostker* no longer exists; women serve alongside men in every capacity, in the air, at sea, and in the fields of combat. Therefore, male, and female servicemembers are similarly situated. With the legal basis requiring only males to register with the Selective Service System inapplicable, Defendants must treat all sexes equally and draw to a close discrimination on the basis of sex.

Forty-five years ago, President Carter recommended to Congress that the Act be extended to cover women. Forty-four years ago, Justice Thurgood Marshall, in his dissent in *Rostker,* referred to male-only registration *"one of the most potent remaining expressions of ancient canards about the proper role of women."*

On, January 8, 2021, in the prior 'mirror' case, NCFM filed a Petition for a Writ of Certiorari with the United States Supreme Court; the National Organization for Women, and the Modern Military Association of America filed Amicus Briefs in support of NCFM's Petition. General Michael Hayden along with nine other military officers also filed an Amicus Briefs in support of NCFM's Petition. General Hayden's brief stated in part that the statute *'made no sense as a matter of 5th Amendment law'*:

"According to the logic underlying the current draft regime, men are more capable of serving in combat than women. Yet the vast majority of men in fact are not, and – most importantly – have no advantage in readiness over women, who the current statutory scheme forbids from registering. ***Such a regime makes no sense, either as a matter of Fifth Amendment law or of military planning.*** Doubling the pool of potential draftees would do more than give the military an opportunity to draw on a larger pool of qualified candidates to meet its needs in the face of a large-scale conflict. It would also permit the military to select the most qualified civilian candidates available for any given role in the military – meaning, a more qualified women could be chosen in the place of a less qualified man. Put differently, doubling the pool of potential draftees would raise the overall quality of the candidate pool and, in doing so, increase military readiness and aid the Nation's security." (Gen. Michael Hayden et al. Amicus Curiae, p. 15–16, NCFM, et al. v Selective Service System, et al. (2021)).

On June 7, 2021, the Supreme Court denied the Petition. Justice Sotomayor cited the fact that Congress would be considering the issue in its next defense bill. Justice Sotomayor stated, "But at least *for now*, the Court's longstanding deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." (Statement of Justice Sotomayer, Pg. 3, 2021 see also [MJN-1 and ECF-101]).

In July of 2021, *one month later*, Congress did, in fact, weigh in on the matter when it drafted the next defense bill. Congress weighed in on the issue for the last five years. A small group of six Congressmembers

were adamantly opposed to making women register and threatened to vote against the draft as a whole if the final bill included the provision to, in its words, *"draft our daughters."*

The comment which references *'our daughters'* is the quintessential definition of 'arbitrary' in that it appears to be based upon random choice or personal whim, rather than any rational or measured thought. Nor is the comment based upon the various studies and memorandum which Congress itself authorized; all of which concluded that the draft should include all draft-aged citizens and immigrants without regard to their sex. Every study and military recommendation have unequivocally concluded that a gender-neutral draft promotes fairness in the military and is in the best interest of our national security. The *'daughters'* comment makes the case that Congress failed to end discrimination arising from the Act on the basis of sex for arbitrary reasons wholly unrelated to any important government interest.

One of the six holdouts, Sen. Josh Hawley, R-Mo., led the charge against the provision in the Senate, he responded to reports that it would be removed from the NDAA by saying he *"certainly hope[s] that is the case. If it is not, then I will keep fighting for a vote on the Senate floor to strip this wrong and misguided provision out of the final bill."* General Hayden and the other military officers who submitted an Amicus Brief in support of women being included in the draft are certainly not misguided and their vast military experience, along with the study Con-

gress authorized is not wrong. These six members of Congress dismiss
the fact that registration for the draft does not mandate that all who reg-
ister are, indeed, drafted; the process has always been selective. Each
registrant would be drafted based upon their ability to serve, regardless
of sex. Selectivity is a hallmark of the draft process where those who are
called may be given deferments or exemptions based upon their physical
or mental abilities or their being an integral part of their family or com-
munity at home.

Those six Congressmembers who opposed including female citizens
and immigrants in the Selective Service System went against the De-
partment of Defense, and their arbitrary views do not reflect the present
roles of enlisted female servicemembers who serve in all branches of the
U.S. military, including in combat roles. These six members of Congress
who used political influence by threatening to hold up approval of the de-
fense bill dismissed the fact that gender-neutral registration celebrates
the achievements and capabilities of enlisted women. These women cur-
rently serve and ready our country to launch the best possible national
defense by allowing the military access to the most qualified people to
serve, *regardless of their sex.*

On June 7, 2021, when the Supreme Court denied NCFM's Petition
for Writ of Certiorari and Justice Sotomayor forewarned that the Court
would defer to Congress *"at least for now."* Three years and eight months
later and Congress has yet to enact gender-neutral registration. Every

year since 2021 when the Supreme Court denied NCFM's Petition for Writ of Certiorari, Congress had the opportunity to act when they passed the annual defense bill which authorizes approximately $900 billion in programs and covers the entire Department of Defense as well as the nuclear program in the Department of Energy.

To prevent tyranny, the U.S. Constitution established three separate but equal branches of government with each branch granted specific powers, limited only by checks and balances in place to avert absolutism by any branch. Congress is tasked with making laws and has been granted great deference by the judiciary related to military affairs. The Court in Rostker stated that, *"None of this is to say that Congress is free to disregard the Constitution when it acts in areas of military affairs…Deference does not mean abdication." Rostker*, 453 U.S. at 70.

Congress may enact laws, but the judiciary has the power to declare them unconstitutional. In our system of checks and balances, courts also guard against the concept of arbitrary Congressional action. With Congressional gridlock at an all-time high, the courts must also guard against arbitrary Congressional inaction. Congress is enacting fewer laws, engaging more gamesmanship which more often serves their own political interests but not their constituents. One member may have the political influence to block votes or through tactical delays keep legisla-

tion in committee to prevent a vote on the floor. As related to registration for the Selective Service System, this form of Congressional action or inaction is a threat to equal protection under the Fifth Amendment.

The Framers drafted the Constitution with separation of powers, in part, to diminish the threat of arbitrary government action. Justice Stevens stated, "I see no reason why the character of their procedures may not be considered relevant to the decision whether the legislative product has caused a deprivation of liberty or property without due process of law." *Fullilove v. Klutznick*, 448 U.S. 448, 248 (1980). Congressional inaction as related to enacting gender-neutral registration for the draft has caused harm countless men and women by enshrining into federal law archaic biases related to the roles of men and women in our society.

When the Court denied NCFM's Petition for Certiorari in 2021, Justice Sotomayor stated that "it remains to be seen, of course, whether Congress will end gender-based registration under the Military Selective Service Act. But at least for now, the Court's long-standing deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." (1-ER-1Statement of Justice Sotomayer, Pg. 3, 2021].

General Hayden's Amicus Brief states that *"[r]equiring women as well as men to register for the selective service would send a clear message that*

*the military values the service of its women equally alongside the service of its men*" (Gen. Michael Hayden et al. Amicus Curiae, p. 21, NCFM, et al. v Selective Service System, et al. (2021)).

The rationale behind Rostker is therefore obsolete as women serve in every capacity from the fields of combat, in aircraft, at sea and four-star generals. The Act must reflect the present role of women who proudly serve in our military. The male-only registration requirement no longer has any relationship to any important or legitimate government interest.

At first glance, the prohibition of women from registering with the Selective Service System seems to confer a benefit to women. Limiting registration to men is based upon antiquated stereotypes of the capacity of women to serve and fully participate in military and civic life; and equally archaic and compartmentalized views that men lack the ability to remain at home as caretakers. The ban assumes women are unsuitable for military service notwithstanding their own individual capabilities and predispositions. The limitation on registration to male citizens sanctifies these biases and encapsulates them in federal law. All the while disregarding one of the hallmarks of the Selective Service System…*that it has and always will be selective.* With 80% of roles non-combat related and various exemptions and deferments, not all who are called to serve will serve in combat, or at all. Each registrant would be drafted based upon their ability to serve, regardless of sex.

The NCMNPS Final Report outlined the *'selective'* processes should a draft be implemented in the future:

> The U.S. military selective service process is based on a common obligation for all persons eligible to submit to a lottery system operated in a manner that is fair and just. The Selective Service System, working with DoD, is responsible for consistently evaluating each individual selected by the lottery and appropriately classifying them for military service, alternative service, or a deferment or exemption. The rules governing registration eligibility requirements, classification, deferments, and exemptions set societal expectations for who should serve. Given the need to maintain the health of the civilian economy and the societal value in exempting some individuals from a military draft, including those providing essential support to their family or community. [NCMNPS Final Report, 2020, P. 90].

The Final Report further stated:

> "In today's All-Volunteer Force, only around a third of positions in the Army—and less in the overall military—have been designated as "ground combat" positions. Should a national emergency require Congress and the President to activate a draft, the military would process and assign inductees based on individual qualifications to meet its many needs. These needs would include a wide range of positions, not solely combat roles." [NCMNPS Final Report, 2020, P. 113]. A future draft in support of today's modern military is likely to require these and similar positions, but may also require intelligence and communication specialists, linguists, logisticians, medical personnel, and drone or cyber operators, among others. The complexity of modern conflict, new technologies such as unmanned systems, and the need to generate and sustain combat power across space and cyber domains discredit the

> notion that a draft would be needed only to replace personnel
> in frontline, combat roles. [NCMNPS Final Report, 2020, P.
> 116].

The Department of Defense advised Congress that allowing women to register would promote military preparedness and fairness. All official reports have recommended that a gender-neutral draft is imperative to our national defense in a time of war. There is simply no justification for the inaction of Congress to prevent and combat discrimination on the basis of sex when they are tasked with passing laws to protect equal rights and uphold the Constitution. Eliminating registration on the basis of sex simply acknowledges the reality that currently exists in our military. A pool of draft-age people, regardless of their sex, will enhance military readiness, and contribute to our national security.

The District Court's ruling warrants reversal. The central question before us—one not contemplated in Rostker v. Goldberg—addresses a fundamentally altered military landscape. Since Rostker, the Department of Defense has eliminated all gender-based combat restrictions, creating parity between men and women in military service. This transformation demands fresh scrutiny of the Act's male-only registration requirement. The essential inquiry is whether this gender-based classification serves any legitimate or important governmental interest in the contemporary military context, or whether it perpetuates what Justice Mar-

shall characterized in his Rostker dissent as *"one of the most potent remaining expressions of ancient canards about the proper role of women."* *Rostker*, 453 U.S. 57.

## CONCLUSION

Based upon the foregoing, The National Coalition for Men, Tyler McNamara, Nicholas Milillo, Nicolas Mendiola, Conor Mckiernan, and Jordan Falcon, respectfully requests that this Court render an opinion directing the District Court to reverse the November 20, 2024, Order granting Defendant's Motion to Dismiss [1-ER-3] and order the Defendants to answer.

Nadine Lewis, Attorney at Law
Respectfully submitted,

Dated: February 3, 2025          By: /s/ Nadine Lewis

Nadine Lewis

*Attorney for Plaintiffs - Appellants*

## FORM 17. STATEMENT OF RELATED CASES
## PURSUANT TO CIRCUIT RULE 28-2.6

**9th Cir. Case Number: No. 24-7746**

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[ **X** ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

NADINE LEWIS, ATTORNEY AT LAW

Dated: February 3, 2025          By: /s/ Nadine Lewis

Nadine Lewis

Attorney for Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **6,847 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

NADINE LEWIS, ATTORNEY AT LAW

Dated: February 3, 2025        By: /s/ Nadine Lewis

Nadine Lewis

Attorney for Plaintiffs-Appellants

## Certificate of Service

I hereby certify that I electronically filed the foregoing **APPEL-LANT'S BRIEF** with the Clerk of the Court by using the Appellate CM/ECF system on **February 3, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Nadine Lewis, Attorney at Law
Respectfully submitted,

Dated: February 3, 2025     By: /s/ Nadine Lewis

Nadine Lewis, Attorney at Law

*Attorney for Plaintiffs - Appellants*

# Addendum

**Compilation of the Military Selective Service Act**

**( 50 U.S.C. App. 451 et seq. )**

# THE MILITARY SELECTIVE SERVICE ACT

**As Amended Through
July 9, 2003**

**Prepared for Use of the Selective Service System
by the Office of the General Counsel**

# THE MILITARY SELECTIVE SERVICE ACT
### ( As Amended Through July 9, 2003 )

### 50 U.S.C. App. 451 et seq. *

| U.S.C.<br>Sec. | | Page |
|---|---|---|
| 451. | Congressional declaration of policy | 1 |
| 452. | Repealed. | |
| 453. | Registration | 2 |
| | (a) Proclamation 4771 as amended by Proclamation 7275 | |
| 454. | Persons liable for training and service | 4 |

| | | |
|---|---|---|
| (a) | Age limits; training in National Security Training Corps; physical and mental fitness; adequate training facilities; assignment to stations and units; training period; medical specialist categories. | |
| (b) | Length of service; release of individuals accepted into Army National Guard, Air National Guard, and other Reserve components. | |
| (c) | Opportunity to enlist in Regular Army; voluntary induction; volunteers under 18 years old. | |
| (d) | Transfer to Reserve component; period of service. | |
| (e) | Pay and allowances. | |
| (f) | Additional compensation from civilian sources. | |
| (g) | Occupational deferment recommendations by National Security Council. | |
| (h) | Repealed. | |
| (i), (j) | Omitted. | |
| (k) | Reduction of periods of service; establishment of National Security Training Corps; composition; service; pay. | |
| (l) | Terminated. | |

454a to 454d. Omitted

454e. Volunteer service of physicians and dentists; minimum period ............... 13

-i-

455.   Manner of selection of men for training and service; quotas . . . . . . . . . . . . . . . . . .   13

456.   Deferments and exemptions from training and service . . . . . . . . . . . . . . . . . . . . . .   15

457.   Repealed.
458.   Bounties for induction; substitutes; purchase of release . . . . . . . . . . . . . . . . . . . . .   27

459.   Separation from service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

       (a)   Certificate recording proficiency and merit; physical examination.
       (b)   Right to vote; manner; poll tax.
       (c)   Reports on separated personnel.

460.   Selective Service System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

       (a)   Establishment; construction; appointment of Director; termination
             and reestablishment of Office of Selective Service Records.
       (b)   Administrative provisions.
       (c)   Delegation of President's authority.
       (d)   Acceptance of gifts and voluntary services.
       (e)   Assignment of armed forces personnel.
       (f)   Settlement of travel claims, etc.
       (g)   Reports to Congress.
       (h)   Maintenance of System after institution of all volunteer program for
             meeting manpower needs.

461.   Emergency medical care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

462.   Offenses and penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

463.   Nonapplicability of certain laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   37

464.   Soldiers' and Sailors' Civil Relief Act as applicable . . . . . . . . . . . . . . . . . . . . . . .   38

465.   Notice of requirements of Act; voluntary enlistments unaffected . . . . . . . . . . . . . .   38

466.   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   39

467.   Repeals; appropriations; termination date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

468.   Utilization of industry . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   40

       (a)   Placement of orders; Congressional action: notification of committees

` of certain proposed payment orders, resolution of disapproval, continuity of session, computation of period; "small business" defined.

(b)    Precedence of Government placed orders.
(c)    Failure to give precedence; Government possession.
(d)    Payment of compensation by United States.
(e)    Application of Federal and State laws governing employees.
(f)    Penalties.
(g)    "Person" and "Government agency" defined.
(h)    Rules and regulations governing steel industry; mandatory.

469.    Savings provisions ................................................. 43

470.    Effective date ...................................................... 43

471.    Authority of President to order Reserve components to active service; release from active duty; retention of unit organizations and equipment ........ 43

471a.  Procedural rights .................................................. 44

472.    Period of increased service applicable to all personnel ..................... 45

473.    Regulations governing liquor sales; penalties ............................. 45

\*      To determine the corresponding MSSA section to each U.S. Code section listed, subtract 450 from the Code section. Therefore, for example, Code section 451 is section 1 in the MSSA; Code section 453 is section 3 in the MSSA; Code section 462 is section 12 in the MSSA. Exceptions: Code section 471(a) converts to MSSA section 22; Code section 472 converts to MSSA section 23; and Code section 473 converts to MSSA section 24.

**Note**: The MSSA, as published in 50 U.S.C. App. 451 et seq., can be found (with notes and the legislative history of amendments at the end of each section) at http://uscode.house.gov/usc.htm .

# THE MILITARY SELECTIVE SERVICE ACT
## (MSSA)

*AN ACT* to provide for the common defense by increasing the strength of the Armed Forces of the United States, including the reserve components thereof, and for other purposes.

(*Note: The Act is provided as updated and published in the U.S. Code (50 U.S.C. App. 451 et seq.). In addition, headings in brackets [ ] are not part of the Act or Code but have been included for the convenience of the reader.*)

**Sec. 451.    Congressional declaration of policy**

(a)    This Act may be cited as the "Military Selective Service Act".

(b)    The Congress declares that an adequate armed strength must be achieved and maintained to insure the security of this Nation.

(c)    The Congress further declares that in a free society the obligations and privileges of serving in the armed forces and the reserve components thereof should be shared generally, in accordance with *a* system of selection which is fair and just, and which is consistent with the maintenance of an effective national economy.

(d)    The Congress further declares, in accordance with our traditional military policy as expressed in the National Defense Act of 1916, as amended, that it is essential that the strength and organization of the National Guard, both Ground and Air, as an integral part of the first line defenses of this Nation, be at all times maintained and assured.

To this end, it is the intent of the Congress that whenever Congress shall determine that units and organizations are needed for the national security in excess of those of the Regular components of the Ground Forces and the Air Forces, and those in active service under this title (sections 451 to 471a of this Appendix), the National Guard of the United States, both Ground and Air, or such part thereof as may be

-1-

necessary, together with such units of the Reserve components as are necessary for a balanced force, shall be ordered to active Federal service and continued therein so long as such necessity exists.

(e) The Congress further declares that adequate provision for national security requires maximum effort in the fields of scientific research and development, and the fullest possible utilization of the Nation's technological, scientific, and other critical manpower resources.

(f) The Congress further declares that the Selective Service System should remain administratively independent of any other agency, including the Department of Defense.

### Sec. 453.     Registration

(a) Except as otherwise provided in this title (sections 451 to 471a of this Appendix) it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder. The provisions of this section shall not be applicable to any alien lawfully admitted to the United States as a nonimmigrant under section 101(a)(15) of the Immigration and Nationality Act, as amended (66 Stat. 163; 8 U.S.C. 1101), for so long as he continues to maintain a lawful nonimmigrant status in the United States.

(b) Regulations prescribed pursuant to subsection (a) may require that persons presenting themselves for and submitting to registration under this section provide, as part of such registration, such identifying information (including date of birth, address, and social security account number) as such regulations may prescribe.

#### PROC. NO. 4771. REGISTRATION UNDER THE SELECTIVE SERVICE ACT

Proc. No. 4771, July 2, 1980,  as amended by Proc. No. 7275, Feb. 22, 2000, provided:  Section 3 of the Military Selective Service Act, as amended (50 U.S.C. App. 453), provides that male citizens of the United States and other male persons residing in the United States who are between the ages of 18 and 26, except those exempted by Sections 3 and 6(a) of the Military Selective Service Act (50 U.S.C. App. 453 and 456(a)), must present themselves for registration at such time or times and place or places, and in such manner as determined by the President. Section 6(k) (50 U.S.C. App. 456(k)) provides that such exceptions shall not continue after the cause for the exemption ceases to exist. The Congress of the United States has made available the funds (H.J. Res. 521, approved by me on June 27, 1980 (Pub. L. 96-282, June 27, 1980, 93 Stat. 552)), which are needed to initiate this registration, beginning with those born on or after January 1,

-2-

43

1960.

NOW, THEREFORE, I, JIMMY CARTER, President of the United States of America, by the authority vested in me by the Military Selective Service Act, as amended (50 U.S.C. App. 451 et seq.), do hereby proclaim as follows:

## 1-1. PERSONS TO BE REGISTERED AND DAYS OF REGISTRATION

1-101. Male citizens of the United States and other males residing in the United States, unless exempted by the Military Selective Service Act, as amended, who were born on or after January 1, 1960, and who have attained their eighteenth birthday, shall present themselves for registration in the manner and at the time and places as hereinafter provided.

1-102. Persons born in calendar year 1960 shall present themselves for registration on any of the six days beginning Monday, July 21, 1980.

1-103. Persons born in calendar year 1961 shall present themselves for registration on any of the six days beginning Monday, July 28, 1980.

1-104. Persons born in calendar year 1962 shall present themselves for registration on any of the six days beginning Monday, January 5, 1981.

1-105. Persons born on or after January 1, 1963, shall present themselves for registration on the day they attain the 18th anniversary of their birth or on any day within the period of 60 days beginning 30 days before such date; however, in no event shall such persons present themselves for registration prior to January 5, 1981.

1-106. Aliens who would be required to present themselves for registration pursuant to Sections 1-101 to 1-105, but who are in processing centers on the dates fixed for registration, shall present themselves for registration within 30 days after their release from such centers.

1-107. Aliens and noncitizen nationals of the United States who reside in the United States, but who are absent from the United States on the days fixed for their registration, shall present themselves for registration within 30 days after their return to the United States.

1-108. Aliens and noncitizen nationals of the United States who, on or after July 1, 1980, come into and reside in the United States shall present themselves for registration in accordance with Sections 1-101 to 1-105 or within 30 days after coming into the United States, whichever is later.

1-109. Persons who would have been required to present themselves for registration pursuant to Sections 1-101 to 1-108 but for an exemption pursuant to Section 3 or 6(a) of the Military Selective Service Act, as amended (50 U.S.C. App. 453 or 456(a)), or but for some condition beyond their control such as hospitalization or incarceration, shall present themselves for registration within 30 days after the cause for their exempt status ceases to exist or within 30 days after the termination of the condition which was beyond their control.

## 1-2. PLACES AND TIMES FOR REGISTRATION

-3-

1-201. Persons who are required to be registered and who are in the United States shall register at the places and by the means designated by the Director of Selective Service. These places and means may include but are not limited to any classified United States Post Office, the Selective Service Internet web site, telephonic registration, registration on approved Government forms, registration through high school and college registrars, and the Selective Service reminder mailback card.

1-202. Citizens of the United States who are required to be registered and who are not in the United States, shall register via any of the places and methods authorized by the Director of Selective Service pursuant to paragraph 1-201 or present themselves at a United States Embassy or Consulate for registration before a diplomatic or consular officer of the United States or before a registrar duly appointed by a diplomatic or consular officer of the United States.

1-203. The hours for registration in United States Post Offices shall be the business hours during the days of operation of the particular United States Post Office. The hours for registration in United States Embassies and Consulates shall be those prescribed by the United States Embassies and Consulates.

### 1-3. MANNER OF REGISTRATION

1-301. Persons who are required to be registered shall comply with the registration procedures and other rules and regulations prescribed by the Director of Selective Service.

1-302. When reporting for registration each person shall present for inspection reasonable evidence of his identity. After registration, each person shall keep the Selective Service System informed of his current address.

Having proclaimed these requirements for registration, I urge everyone, including employers in the private and public sectors, to cooperate with and assist those persons who are required to be registered in order to ensure a timely and complete registration. Also, I direct the heads of Executive agencies, when requested by the Director of Selective Service and to the extent permitted by law, to cooperate and assist in carrying out the purposes of this Proclamation.

IN WITNESS WHEREOF, I have hereunto set my hand this second day of July, in the year of our Lord nineteen hundred and eighty, and of the Independence of the United States of America the two hundred and fourth.    *Jimmy Carter*.

### Sec. 454.    Persons liable for training and service

(a)    **Age limits; training in National Security Training Corps; physical and mental fitness; adequate training facilities; assignment to stations and units; training period; medical specialist categories**

Except as otherwise provided in this title (sections 451 to 471a of this Appendix),

-4-

45

every person required to register pursuant to section 3 of this title (section 453 of this Appendix) who is between the ages of eighteen years and six months and twenty-six years, at the time fixed for his registration, or who attains the age of eighteen years and six months after having been required to register pursuant to section 3 of this title (section 453 of this Appendix), or who is otherwise liable as provided in section 6(h) of this title (section 456(h) of this Appendix), shall be liable for training and service in the Armed Forces of the United States: Provided, That each registrant shall be immediately liable for classification and examination, and shall, as soon as practicable following his registration, be so classified and examined, both physically and mentally, in order to determine his availability for induction for training and service in the Armed Forces: Provided further, That, notwithstanding any other provision of law, any registrant who has failed or refused to report for induction shall continue to remain liable for induction and when available shall be immediately inducted. The President is authorized, from time to time, whether or not a state of war exists, to select and induct into the Armed Forces of the United States for training and service in the manner provided in this title (said sections) (including but not limited to selection and induction by age group or age groups) such number of persons as may be required to provide and maintain the strength of the Armed Forces.

At such time as the period of active service in the Armed Forces required under this title (said sections) of persons who have not attained the nineteenth anniversary of the day of their birth has been reduced or eliminated pursuant to the provisions of section 4(k) of this title (subsection (k) of this section), and except as otherwise provided in this title (said sections), every person who is required to register under this title (said sections) and who has not attained the nineteenth anniversary of the day of his birth on the date such period of active service is reduced or eliminated or who is otherwise liable as provided in section 6(h) of this title (section 456(h) of this Appendix), shall be liable for training in the National Security Training Corps: Provided, That persons deferred under the provisions of section 6 of this title (section 456 of this Appendix) shall not be relieved from liability for induction into the National Security Training Corps solely by reason of having exceeded the age of nineteen years during the period of such deferment. The President is authorized, from time to time, whether or not a state of war exists, to select and induct for training in the National Security Training Corps as hereinafter provided such number of persons as may be required to further the purposes of this title (said sections).

No person shall be inducted into the Armed Forces for training and service or shall be inducted for training in the National Security Training Corps under this title (said sections) until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense: Provided, That the minimum standards for physical acceptability established pursuant to this subsection shall not be higher than those

-5-

46

applied to persons inducted between the ages of 18 and 26 in January 1945: Provided further, That the passing requirement for the Armed Forces Qualification Test shall be fixed at a percentile score of 10 points: And provided further, That except in time of war or national emergency declared by the Congress the standards and requirements fixed by the preceding two provisos may be modified by the President under such rules and regulations as he may prescribe.

No persons shall be inducted for such training and service until adequate provision shall have been made for such shelter, sanitary facilities, water supplies, heating and lighting arrangements, medical care, and hospital accommodations for such persons as may be determined by the Secretary of Defense or the Secretary of Transportation to be essential to the public and personal health.

The persons inducted into the Armed Forces for training and service under this title (said sections) shall be assigned to stations or units of such forces. Persons inducted into the land forces of the United States pursuant to this title (said sections) shall be deemed to be members of the Army of the United States; persons inducted into the naval forces of the United States pursuant to this title (said sections) shall be deemed to be members of the United States Navy or the United States Marine Corps or the United States Coast Guard, as appropriate; and persons inducted into the air forces of the United States pursuant to this title (said sections) shall be deemed to be members of the Air Force of the United States.

Every person inducted into the Armed Forces pursuant to the authority of this subsection after the date of enactment of the 1951 Amendments to the Universal Military Training and Service Act (June 19, 1951) shall, following his induction, be given full and adequate military training for service in the armed force into which he is inducted for a period of not less than twelve weeks, and no such person shall, during this twelve weeks period, be assigned for duty at any installation located on land outside the United States, its Territories and possessions (including the Canal Zone): Provided, That no funds appropriated by the Congress shall be used for the purpose of transporting or maintaining in violation of the provisions of this paragraph any person inducted into, or enlisted, appointed, or ordered to active duty in, the Armed Forces under the provisions of this title (said sections).

No person, without his consent, shall be inducted for training and service in the Armed Forces or for training in the National Security Training Corps under this title (said sections), except as otherwise provided herein, after he has attained the twenty-sixth anniversary of the day of his birth.

(b) **Length of service; release of individuals accepted into Army National Guard, Air National Guard, and other Reserve components**

Each person inducted into the Armed Forces under the provisions of subsection (a) of this section shall serve on active training and service for a period of twenty-four consecutive months, unless sooner released, transferred, or discharged in accordance with procedures prescribed by the Secretary of Defense (or the

-6-

Secretary of Transportation with respect to the United States Coast Guard) or as otherwise prescribed by subsection (d) of section 4 of this title (subsection (d) of this section). The Secretaries of the Army, Navy, and Air Force, with the approval of the Secretary of Defense (and the Secretary of Transportation with respect to the United States Coast Guard), may provide, by regulations which shall be as nearly uniform as practicable, for the release from training and service in the armed forces prior to serving the periods required by this subsection of individuals who volunteered for and are accepted into organized units of the Army National Guard and Air National Guard and other reserve components.

(c)     **Opportunity to enlist in Regular Army; voluntary induction; volunteers under 18 years old**

(1)     Under the provisions of applicable laws and regulations any person between the ages of eighteen years and six months and twenty-six years shall be offered an opportunity to enlist in the regular army for a period of service equal to that prescribed in subsection (b) of this section: Provided, That, notwithstanding the provisions of this or any other Act, any person so enlisting shall not have his enlistment extended without his consent until after a declaration of war or national emergency by the Congress after the date of enactment of the 1951 Amendments to the Universal Military Training and Service Act (June 19, 1951).

(2)     Any enlisted member of any reserve component of the Armed Forces may, during the effective period of this Act, apply for a period of service equal to that prescribed in subsection (b) of this section and his application shall be accepted: Provided, That his services can be effectively utilized and that his physical and mental fitness for such service meet the standards prescribed by the head of the department concerned: Provided further, That active service performed pursuant to this section shall not prejudice his status as such member of such reserve component: And provided further, That any person who was a member of a reserve component on June 25, 1950, and who thereafter continued to serve satisfactorily in such reserve component, shall, if his application for active duty made pursuant to this paragraph is denied, be deferred from induction under this title (sections 451 to 471a of this Appendix) until such time as he is ordered to active duty or ceases to serve satisfactorily in such reserve component.

(3)     Within the limits of the quota determined under sections 5(b) (section 455(b) of this Appendix) for the subdivision in which he resides, any person, between the ages of eighteen and twenty-six, shall be afforded an opportunity to volunteer for induction into the Armed Forces of the United States for the training and service prescribed in subsection (b), but no person who so volunteers shall be inducted for such training and service so long as he is deferred after classification.

(4)    Within the limits of the quota determined under section 5(b) (section 455(b) of this Appendix) for the subdivision in which he resides, any person after attaining the age of seventeen shall with the written consent of his parents or guardian be afforded an opportunity to volunteer for induction into the Armed Forces of the United States for the training and service prescribed in subsection (b).

(5)    Within the limits of the quota determined under section 5(b) (section 455(b) of this Appendix) for the subdivision in which he resides, at such time as induction into the National Security Training Corps is authorized pursuant to the provisions of this title (sections 451 to 471a of this Appendix), any person after attaining the age of seventeen shall with the written consent of his parents or guardian be afforded an opportunity to volunteer for induction into the National Security Training Corps for the training prescribed in subsection (k) of section 4 of this title (subsection (k) of this section).

(d) **Transfer to Reserve component; period of service**

(1)    Each person who hereafter and prior to the enactment of the 1951 Amendments to the Universal Military Training and Service Act (June 19, 1951) is inducted, enlisted, or appointed and serves for a period of less than three years in one of the armed forces and meets the qualifications for enlistment or appointment in a reserve component of the armed force in which he serves, shall be transferred to a reserve component of such armed force, and until the expiration of a period of five years after such transfer, or until he is discharged from such reserve component, whichever occurs first, shall be deemed to be a member of such reserve component and shall be subject to such additional training and service as may now or hereafter be prescribed by law for such reserve component: Provided, That any such person who completes at least twenty-one months of service in the armed forces and who thereafter serves satisfactorily (1) on active duty in the armed forces under a voluntary extension for a period of at least one year, which extension is authorized, or (2) in an organized unit of any reserve component of any of the armed forces for a period of at least thirty-six consecutive months, shall, except in time of war or national emergency declared by the Congress, be relieved from any further liability under this subsection to serve in any reserve component of the armed forces of the United States, but nothing in this subsection shall be construed to prevent any such person, while in a reserve component of such forces, from being ordered or called to active duty in such forces.

(2)    Each person who hereafter and prior to the enactment of the 1951 Amendments to the Universal Military Training and Service Act (June 19, 1951) is enlisted under the provisions of subsection (g) of this section and who meets the qualifications for enlistment or appointment in a reserve component of the armed forces shall, upon discharge from such enlistment

under honorable conditions, be transferred to a reserve component of the armed forces of the United States and shall serve therein for a period of six years or until sooner discharged. Each such person shall, so long as he is a member of such reserve component, be liable to be ordered to active duty, but except in time of war or national emergency declared by the Congress no such person shall be ordered to active duty, without his consent and except as hereinafter provided, for more than one month in any year. In case the Secretary of the Army, the Secretary of the Navy, or the Secretary of the Air Force determines that enlistment, enrollment, or appointment in, or assignment to, an organized unit of a reserve component or an officers' training program of the armed force in which he served is available to, and can without undue hardship be filled by, any such person, it shall be the duty of such person to enlist, enroll, or accept appointment in, or accept assignment to, such organized unit or officers' training program and to serve satisfactorily therein for a period of four years. Any such person who fails or refuses to perform such duty may be ordered to active duty, without his consent, for an additional period of not more than twelve consecutive months. Any such person who enlists or accepts appointment in any such organized unit and serves satisfactorily therein for a period of four years shall, except in time of war or national emergency declared by the Congress, be relieved from any further liability under this subsection to serve in any reserve component of the armed forces of the United States, but nothing in this subsection shall be construed to prevent any such person, while in a reserve component of such forces, from being ordered or called to active duty in such forces. The Secretary of Defense is authorized to prescribe regulations governing the transfer of such persons within and between reserve components of the armed forces and determining, for the purpose of the requirements of the foregoing provisions of this paragraph, the credit to be allowed any person so transferring for his previous service in one or more reserve components.

(3)     Each person who, subsequent to June 19, 1951, and on or before August 9, 1955, is inducted, enlisted, or appointed, under any provision of law, in the Armed Forces, including the reserve components thereof, or in the National Security Training Corps prior to attaining the twenty-sixth anniversary of his birth, shall be required to serve on active training and service in the Armed Forces or in training in the National Security Training Corps, and in a reserve component, for a total period of eight years, unless sooner discharged on grounds of personal hardship, in accordance with regulations and standards prescribed by the Secretary of Defense (or the Secretary of Transportation with respect to the United States Coast Guard). Each such person, on release from active training and service in the Armed Forces or from training in the National Security Training Corps, shall, if physically and mentally qualified, be transferred to a reserve component of the Armed Forces, and

-9-

shall serve therein for the remainder of the period which he is required to serve under this paragraph and shall be deemed to be a member of the reserve component during that period. If the Secretary of the Army, the Secretary of the Navy, or the Secretary of the Air Force, or the Secretary of Transportation with respect to the United States Coast Guard, determines that enlistment, enrollment, or appointment in, or assignment to, an organized unit of a reserve component or an officers' training program of the armed force in which he served is available to, and can, without undue personal hardship, be filled by such a person, that person shall enlist, enroll, or accept appointment in, or accept assignment to, the organized unit or officers' training program, and serve satisfactorily therein.

(e) **Pay and allowances**

With respect to the persons inducted for training and service under this title (sections 451 to 471a of this Appendix) there shall be paid, allowed, and extended the same pay, allowances, pensions, disability and death compensation, and other benefits as are provided by law in the case of other enlisted men of like grades and length of service of that component of the armed forces to which they are assigned. Section 3 of the Act of July 25, 1947 (Public Law 239, Eightieth Congress), is amended by deleting therefrom the following: "Act of March 7, 1942 (56 Stat. 143 to 148, ch. 166), as amended". The Act of March 7, 1942 (56 Stat. 143 to 148), as amended, is made applicable to persons inducted into the armed forces pursuant to this title (said sections).

(f) **Additional compensation from civilian sources**

Notwithstanding any other provision of law, any person who is inducted into the armed forces under this Act and who, before being inducted, was receiving compensation from any person may, while serving under that induction, receive compensation from that person.

(g) **Occupational deferment recommendations by National Security Council**

The National Security Council shall periodically advise the Director of the Selective Service System and coordinate with him the work of such State and local volunteer advisory committees which the Director of Selective Service may establish, with respect to the identification, selection, and deferment of needed professional and scientific personnel and those engaged in, and preparing for, critical skills and other essential occupations. In the performance of its duties under this subsection the National Security Council shall consider the needs of both the Armed Forces and the civilian segment of the population.

(h) Repealed. June 19, 1951, ch. 144, title I, Sec. 1(h), 65 Stat. 80

(i), (j) Omitted

(k) **Reduction of periods of service; establishment of National Security**

-10-

51

**Training Corps; composition; service; pay**

(1)     Upon a finding by him that such action is justified by the strength of the Armed Forces in the light of international conditions, the President, upon recommendation of the Secretary of Defense, is authorized, by Executive order, which shall be uniform in its application to all persons inducted under this title (sections 451 to 471a of this Appendix) but which may vary as to age groups, to provide for (A) decreasing periods of service under this title (said sections) but in no case to a lesser period of time than can be economically utilized, or (B) eliminating periods of service required under this title (said sections).

(2) Whenever the Congress shall by concurrent resolution declare

    (A)     that the period of active service required of any age group or groups of persons inducted under this title (said sections) should be decreased to any period less than twenty-four months which may be designated in such resolution; or

    (B)     that the period of active service required of any age group or groups of persons inducted under this title (said sections) should be eliminated,

the period of active service in the Armed Forces of the age group or groups designated in any such resolution shall be so decreased or eliminated, as the case may be. Whenever the period of active service required under this title (said sections) of persons who have not attained the nineteenth anniversary of the day of their birth has been reduced or eliminated by the President or as a result of the adoption of a concurrent resolution of the Congress in accordance with the foregoing provisions of this section, all individuals then or thereafter liable for registration under this title (said sections) who on that date have not attained the nineteenth anniversary of the day of their birth and have not been inducted into the Armed Forces shall be liable, effective on such date, for induction into the National Security Training Corps as hereinafter established for initial military training for a period of six months.

(3), (4) Repealed.

(5)     The Commission shall, subject to the direction of the President, exercise general supervision over the training of the National Security Training Corps, which training shall be basic military training. The Commission shall establish such policies and standards with respect to the conduct of the training of members of the National Security Training Corps as are necessary to carry out the purposes of this Act. The Commission shall make adequate provisions for the moral and spiritual welfare of members of the National Security Training Corps. The Secretary of Defense shall designate

-11-

the military departments to carry out such training. Each military department so designated shall carry out such military training in accordance with the policies and standards of the Commission. The military department or departments so designated to carry out such military training shall, subject to the approval of the Secretary of Defense, and subject to the policies and standards established by the Commission, determine the type or types of basic military training to be given to members of the National Security Training Corps.

(6)   Repealed.

(7)   Not later than four months following confirmation of the members of the Commission, the Commission shall submit to the Congress legislative recommendations which shall include, but not be limited to -

    (A)   a broad outline for a program deemed by the Commission and approved by the Secretary of Defense to be appropriate to assure that the training carried out under the provisions of this Act shall be of a military nature, but nothing contained in this paragraph shall be construed to grant to the Commission the authority to prescribe the basic type or types of military training to be given members of the National Security Training Corps;

    (B)   measures for the personal safety, health, welfare and morals of members of the National Security Training Corps;

    (C)   a code of conduct, together with penalties for violation thereof;

    (D)   measures deemed necessary to implement the policies and standards established under the provisions of paragraph (5) of this subsection; and

    (E)   disability and death benefits and other benefits, and the obligations, duties, liabilities and responsibilities, to be granted to or imposed upon members of the National Security Training Corps.

All legislative recommendations submitted under this paragraph shall be referred to the Committees on Armed Services of the two Houses, and each of such committees shall, not later than the expiration of the first period of 45 calendar days of continuous sessions of the Congress, following the date on which the recommendations provided for in this paragraph are transmitted to the Congress, report thereon to its House: Provided, That any bill or resolution reported with respect to such recommendations shall be privileged and may be called up by any member of either House but shall be subject to amendment as if it were not so privileged.

(8)   No person shall be inducted into the National Security Training Corps until after -

    (A)   a code of conduct, together with penalties for violation thereof, and

-12-

53

measures providing for disability and death benefits have been enacted into law; and

(B)    such other legislative recommendations as are provided for in paragraph (7) shall have been considered and such recommendations or any portion thereof shall have been enacted with or without amendments into law; and

(C)    the period of service required under this title (sections 451 to 471a of this Appendix) of persons who have not attained the nineteenth anniversary of the day of their birth has been reduced or eliminated by the President or as a result of the adoption of a concurrent resolution of the Congress in accordance with paragraph (2) of this subsection.

(9)    Six months following the commencement of induction of persons into the National Security Training Corps, and semiannually thereafter, the Commission shall submit to the Congress a comprehensive report describing in detail the operation of the National Security Training Corps, including the number of persons inducted therein, a list of camps and stations at which training is being conducted, a report on the number of deaths and injuries occurring during such training and the causes thereof, an estimate of the performance of the persons inducted therein, including an analysis of the disciplinary problems encountered during the preceding six months, the number of civilian employees of the Commission and the administrative costs of the Commission. Simultaneously, there shall be submitted to the Congress by the Secretary of Defense a report setting forth an estimate of the value of the training conducted during the preceding six months, the cost of the training program chargeable to the appropriations made to the Department of Defense, and the number of personnel of the Armed Forces directly engaged in the conduct of such training.

(10)    Each person inducted into the National Security Training Corps shall be compensated at the monthly rate of $30: Provided, however, That each such person, having a dependent or dependents shall be entitled to receive a dependency allowance equal to the basic allowance for housing provided for persons in pay grade E-1 under section 403 of title 37 plus $40 so long as such person has in effect an allotment equal to the amount of such dependency allowance for the support of the dependent or dependents on whose account the allowance is claimed.

(11)    No person inducted into the National Security Training Corps shall be assigned for training at an installation located on land outside the continental United States, except that residents of Territories and possessions of the United States may be trained in the Territory or possession from which they were inducted.

(l) Terminated

-13-

**Sec. 454e     Volunteer service of physicians and dentists; minimum period.**

Any physician or dentist who meets the qualifications for a reserve commission in the respective military departments shall, so long as there is a need for the services of such a physician or dentist, be afforded an opportunity to volunteer for a period of active duty of not less than twenty-four months. Any physician or dentist who so volunteers his service, and meets the qualifications for a reserve commission shall be ordered to active duty for not less than twenty-four months, notwithstanding the grade or rank to which such physician or dentist is entitled under the provisions of the Act of September 9, 1950, as amended.  ( Note: This section was not enacted as part of the MSSA. )

**Sec. 455.     Manner of Selection of men for training and service; quotas.**

(a)     (1) The selection of persons for training and service under section 4 (section 454 of this Appendix) shall be made in an impartial manner, under such rules and regulations as the President may prescribe, from the persons who are liable for such training and service and who at the time of selection are registered and classified, but not deferred or exempted: Provided, That in the selection of persons for training and service under this title (sections 451 to 471a of this Appendix), and in the interpretation and execution of the provisions of this title (said sections), there shall be no discrimination against any person on account of race or color: Provided further, That in the classification of registrants within the jurisdiction of any local board, the registrants of any particular registration may be classified, in the manner prescribed by and in accordance with rules and regulations prescribed by the President, before, together with, or after the registrants of any prior registration or registrations; and in the selection for induction of persons within the jurisdiction of any local board and within any particular classification, persons who were registered at any particular registration may be selected, in the manner prescribed by and in accordance with rules and regulations prescribed by the President, before, together with, or after persons who were registered at any prior registration or registrations: And provided further, That nothing herein shall be construed to prohibit the selection or induction of persons by age group or groups under rules and regulations prescribed by the President: And provided further, That

> (1) no local board shall order for induction for training and service in the Armed Forces of the United States any person who has not attained the age of nineteen unless there is not within the jurisdiction of such local board a sufficient number of persons who are deemed by such local board to be available for induction and who have attained the age of nineteen to enable such local board to meet a call for men which it has been ordered to furnish for induction;

-14-

55

(2) no local board shall order for induction for training and service in the Armed Forces of the United States any person who has not attained the age of nineteen, if there is any person within the jurisdiction of such local board who (i) is as much as ninety days older, (ii) has not attained the age of nineteen, and (iii) is deemed by the local board to be available for induction; and

(3) no local board shall order for induction for training and service in the Armed Forces of the United States an alien unless such alien shall have resided in the United States for one year.

(2) Repealed. Pub. L. 91-124, Sec. 2, Nov. 26, 1969, 83 Stat. 220.

(b)    Quotas of men to be inducted for training and service under this title (sections 451 to 471a of this Appendix) shall be determined for each State, Territory, possession, and the District of Columbia, and for subdivisions thereof, on the basis of the actual number of men in the several States, Territories, possessions, and the District of Columbia, and the subdivisions thereof, who are liable for such training and service but who are not deferred after classification, except that credits shall be given in fixing such quotas for residents of such subdivisions who are in the armed forces of the United States on the date fixed for determining such quotas. After such quotas are fixed, credits shall be given in filling such quotas for residents of such subdivisions who subsequently become members of such forces. Until the actual numbers necessary for determining the quotas are known, the quotas may be based on estimates, and subsequent adjustments therein shall be made when such actual numbers are known. All computations under this subsection shall be made in accordance with such rules and regulations as the President may prescribe.

(c)    Terminated

(d)    Whenever the President has provided for the selection of persons for training and service in accordance with random selection under subsection (a) of this section, calls for induction may be placed under such rules and regulations as he may prescribe, notwithstanding the provisions of subsection (b) of this section.

(e)    Notwithstanding any other provision of this Act, not more that 130,000 persons may be inducted into the Armed Forces under this Act in the fiscal year ending June 30, 1972, and not more than 140,000 in the fiscal year ending June 30, 1973, unless a number greater than that authorized in this subsection for such fiscal year or years is authorized by a law enacted after the date of enactment of this subsection (Sept. 28, 1971).

## Sec. 456.    Deferments and exemptions from training and service

(a)    **[ Exemptions from Registration and Service ]**

-15-

(1)    Commissioned officers, warrant officers, pay clerks, enlisted men, and aviation cadets of the Regular Army, the Navy, the Air Force, the Marine Corps, the Coast Guard, and the Environmental Science Services Administration; cadets, United States Military Academy; midshipmen, United States Naval Academy; cadets, United States Air Force Academy; cadets, United States Coast Guard Academy; midshipmen, Merchant Marine Reserve, United States Naval Reserves; students enrolled in an officer procurement program at military colleges the curriculum of which is approved by the Secretary of Defense; members of the reserve components of the Armed Forces and the Coast Guard, while on active duty; and foreign diplomatic representatives, technical attacheAE1s of foreign embassies and legations, consuls general, consuls, vice consuls and other consular agents of foreign countries who are not citizens of the United States, and members of their families, and persons in other categories to be specified by the President who are not citizens of the United States, shall not be required to be registered under section 3 (section 453 of this Appendix) and shall be relieved from liability for training and service under section 4 (section 454 of this Appendix), except that aliens admitted for permanent residence in the United States shall not be so exempted: Provided, That any alien lawfully admitted for permanent residence as defined in paragraph (20) of section 101(a) of the Immigration and Nationality Act, as amended (66 Stat. 163, 8 U.S.C. 1101), and who by reason of occupational status is subject to adjustment to nonimmigrant status under paragraph (15)(A), (15)(E), or (15)(G) of such section 101(a) (8 U.S.C. 1101(a)(15)(A), (E), or (G)) but who executes a waiver in accordance with section 247(b) of that Act (8 U.S.C. 1257(b)) of all rights, privileges, exemptions, and immunities which would otherwise accrue to him as a result of that occupational status, shall be subject to registration under section 3 of this Act (section 453 of this Appendix), but shall be deferred from induction for training and service for so long as such occupational status continues. Any person who subsequent to June 24, 1948, serves on active duty for a period of not less than twelve months in the armed forces of a nation with which the United States is associated in mutual defense activities as defined by the President, may be exempted from training and service, but not from registration, in accordance with regulations prescribed by the President, except that no such exemption shall be granted to any person who is a national of a country which does not grant reciprocal privileges to citizens of the United States: Provided, That any active duty performed prior to June 24, 1948, by a person in the armed forces of a country allied with the United States during World War II and with which the United States is associated in such mutual defense activities, shall be credited in the computation of such twelve-month period: Provided further, That any person who is in a medical, dental, or allied specialist category not otherwise deferred or exempted under this subsection shall be

-16-

liable for registration and training and service until the thirty-fifth anniversary of the date of his birth.

(2) Commissioned officers of the Public Health Service and members of the Reserve of the Public Health Service while on active duty and assigned to staff the various offices and bureaus of the Public Health Service, including the National Institutes of Health, or assigned to the Coast Guard, the Bureau of Prisons, Department of Justice, the Environmental Protection Agency, or the Environmental Science Services Administration or who are assigned to assist Indian tribes, groups, bands, or communities pursuant to the Act of August 5, 1954 (68 Stat. 674), as amended (42 U.S.C. 2001 et seq.), shall not be required to be registered under section 3 (section 453 of this Appendix) and shall be relieved from liability for training and service under section 4 (section 454 of this Appendix). Notwithstanding the preceding sentence, commissioned officers of the Public Health Service and members of the Reserve of the Public Health Service who, prior to the enactment of this paragraph (June 30, 1967), had been detailed or assigned to duty other than that specified in the preceding sentence shall not be required to be registered under section 3 (section 453 of this Appendix) and shall be relieved from liability for training and service under section 4 (section 454 of this Appendix).

(b) **[Veterans Exemptions]**

(1) No person who served honorably on active duty between September 16, 1940, and the date of enactment of this title (June 24, 1948) for a period of twelve months or more, or between December 7, 1941, and September 2, 1945, for a period in excess of ninety days, in the Army, the Air Force, the Navy, the Marine Corps, the Coast Guard, the Public Health Service, or the armed forces of any country allied with the United States in World War II prior to September 2, 1945, shall be liable for induction for training and service under this title (sections 451 to 471a of this Appendix), except after a declaration of war or national emergency made by the Congress subsequent to the date of enactment of this title (June 24, 1948).

(2) No person who served honorably on active duty between September 16, 1940, and the date of enactment of this title (June 24, 1948) for a period of ninety days or more but less than twelve months in the Army, the Air Force, the Navy, the Marine Corps, the Coast Guard, the Public Health Service, or the armed forces of any country allied with the United States in World War II prior to September 2, 1945, shall be liable for induction for training and service under this title (sections 451 to 471a of this Appendix), except after a declaration of war or national emergency made by the Congress subsequent to the date of enactment of this title (June 24, 1948), if -

(A) the local board determines that he is regularly enlisted or

-17-

commissioned in any organized unit of a reserve component of the armed force in which he served, provided such unit is reasonably accessible to such person without unduly interrupting his normal pursuits and activities (including attendance at a college or university in which he is regularly enrolled), or in a reserve component (other than in an organized unit) of such armed force in any case in which enlistment or commission in an organized unit of a reserve component of such armed force is not available to him; or

(B)    the local board determines that enlistment or commission in a reserve component of such armed force is not available to him or that he has voluntarily enlisted or accepted appointment in an organized unit of a reserve component of an armed force other than the armed force in which he served.

Nothing in this paragraph shall be deemed to be applicable to any person to whom paragraph (1) of this subsection is applicable.

(3)    Except as provided in section 5(a) of this Act (section 455(a) of this Appendix), and notwithstanding any other provision of this Act, no person who (A) has served honorably on active duty after September 16, 1940, for a period of not less than one year in the Army, the Air Force, the Navy, the Marine Corps, or the Coast Guard, or (B) subsequent to September 16, 1940, was discharged for the convenience of the Government after having served honorably on active duty for a period of not less than six months in the Army, the Air Force, the Navy, the Marine Corps, or the Coast Guard, or (C) has served for a period of not less than twenty-four months (i) as a commissioned officer in the Public Health Service or (ii) as a commissioned officer in the Coast and Geodetic Survey, shall be liable for induction for training and service under this Act, except after a declaration of war or national emergency made by the Congress subsequent to the date of enactment of this title (June 24, 1948).

(4)    No person who is honorably discharged upon the completion of an enlistment pursuant to section 4(c) (section 454(c) of this Appendix) shall be liable for induction for training and service under this title (sections 451 to 471a of this Appendix), except after a declaration of war or national emergency made by the Congress subsequent to the date of enactment of this title (June 24, 1948).

(5)    For the purposes of computation of the periods of active duty referred to in paragraphs (1), (2), or (3) of this subsection, no credit shall be allowed for

(A)    periods of active duty training performed as a member of a reserve component pursuant to an order or call to active duty solely for training purposes;

(B)    periods of active duty in which the service consisted solely of training

-18-

under the Army specialized training program, the Army Air Force college training program, or any similar program under the jurisdiction of the Navy, Marine Corps, or Coast Guard;

(C)    periods of active duty as a cadet at the United States Military Academy or United States Coast Guard Academy, or as a midshipman at the United States Naval Academy, or in a preparatory school after nomination as a principal, alternate, or candidate for admission to any of such academies; or

(D)    periods of active duty in any of the armed forces while being processed for entry into or separation from any educational program or institution referred to in paragraphs (B) or (C);

(c)    **[Reserve Components Exemptions]**

(1)    Persons who, on February 1, 1951, were members of organized units of the federally recognized National Guard, the federally recognized Air National Guard, the Officers' Reserve Corps, the Regular Army Reserve, the Air Force Reserve, the Enlisted Reserve Corps, the Naval Reserve, the Marine Corps Reserve, the Coast Guard Reserve, or the Public Health Service Reserve, shall, so long as they continue to be such members and satisfactorily participate in scheduled drills and training periods as prescribed by the Secretary of Defense, be exempt from training and service by induction under the provisions of this title (sections 451 to 471a of this Appendix), but shall not be exempt from registration unless on active duty.

(2)    (A) Any person, other than a person referred to in subsection (d) of this section, who -

(i) prior to the issuance of orders for him to report for induction; or

(ii) prior to the date scheduled for his induction and pursuant to a proclamation by the Governor of a State to the effect that the authorized strength of any organized unit of the National Guard of that State cannot be maintained by the enlistment or appointment of persons who have not been issued orders to report for induction under this title (sections 451 to 471a of this Appendix); or

(iii) prior to the date scheduled for his induction and pursuant to a determination by the President that the strength of the Ready Reserve of the Army Reserve, Naval Reserve, Marine Corps Reserve, Air Force Reserve, or Coast Guard Reserve cannot be maintained by the enlistment or appointment of persons who have not been issued orders to report for induction under this title (sections 451 to 471a of this Appendix);

enlists or accepts appointment, before attaining the age of 26 years, in the Ready Reserve of any Reserve component of the Armed Forces, the Army

-19-

National Guard, or the Air National Guard, shall be deferred from training and service under this title (sections 451 to 471a of this Appendix) so long as he serves satisfactorily as a member of an organized unit of such Reserve or National Guard in accordance with section 10147 of title 10 or section 502 of title 32, United States Code, as the case may be, or satisfactorily performs such other Ready Reserve service as may be prescribed by the Secretary of Defense. Enlistments or appointments under subparagraphs (ii) and (iii) of this clause may be accepted notwithstanding the provisions of section 15(d) of this title (section 465(d) of this Appendix). Notwithstanding the provisions of subsection (h) of this section, no person deferred under this clause who has completed six years of such satisfactory service as a member of the Ready Reserve or National Guard, and who during such service has performed active duty for training with an armed force for not less than twelve consecutive weeks, shall be liable for induction for training and service under this Act, except after a declaration of war or national emergency made by the Congress after August 9, 1955. In no event shall the number of enlistments or appointments made under authority of this paragraph in any fiscal year in any Reserve component of the Armed Forces or in the Army National Guard or the Air National Guard cause the personnel strength of such Reserve component or the Army National Guard or the Air National Guard, as the case may be, to exceed the personnel strength for which funds have been made available by the Congress for such fiscal year.

(B) A person who, under any provision of law, is exempt or deferred from training and service under this Act by reason of membership in a reserve component, the Army National Guard, or the Air National Guard, as the case may be, shall, if he becomes a member of another reserve component, the Army National Guard, or the Air National Guard, as the case may be, continue to be exempt or deferred to the same extent as if he had not become a member of another reserve component, the Army National Guard, or the Air National Guard, as the case may be, so long as he continues to serve satisfactorily.

(C) Except as provided in subsection (b) and the provisions of this subsection, no person who becomes a member of a reserve component after February 1, 1951, shall thereby be exempt from registration or training and service by induction under the provisions of this Act.

(D) Notwithstanding any other provision of this Act, the President, under such rules and regulations as he may prescribe, may provide that any person enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces (other than under section 12103 of title 10, United States Code), the Army National Guard, or the Air National Guard, prior to attaining age of twenty-six years, or any person enlisted or appointed in the Army National Guard or the Air National Guard or enlisted in

-20-

61

the Ready Reserve of any reserve component prior to attaining the age of eighteen years and six months and deferred under the prior provisions of this paragraph as amended by the Act of October 4, 1961, Public Law 87-378 (75 Stat. 807), or under section 262 of the Armed Forces Reserve Act of 1952, as amended (50 U.S.C. 1013), who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve or National Guard or the Ready Reserve of another reserve component or the National Guard of which he becomes a member, may be selected for training and service and inducted into the armed force of which such reserve component is a part, prior to the selection and induction of other persons liable therefor.

(d)     **[Officers' Training; Deferment of Students Authorized]**

(1)     Within such numbers as may be prescribed by the Secretary of Defense, any person who (A) has been or may hereafter be selected for enrollment or continuance in the senior division, Reserve Officers' Training Corps, or the Air Reserve Officers' Training Corps, or the Naval Reserve Officers' Training Corps, or the naval and Marine Corps officer candidate training program established by the Act of August 13, 1946 (60 Stat. 1057), as amended, or the Reserve officers' candidate program of the Navy, or the platoon leaders' class of the Marine Corps, or the officer procurement programs of the Coast Guard and the Coast Guard Reserve, or appointed an ensign, United States Naval Reserve, while undergoing professional training; (B) agrees, in writing, to accept a commission, if tendered, and to serve, subject to order of the Secretary of the military department having jurisdiction over him (or the Secretary of Transportation with respect to the United States Coast Guard), not less than two years on active duty after receipt of a commission; and (C) agrees to remain a member of a regular or reserve component until the eighth anniversary of the receipt of a commission in accordance with his obligation under the first sentence of section 651 of title 10, United States Code, or until the sixth anniversary of the receipt of a commission in accordance with his obligation under the second sentence of section 651 of title 10, United States Code, shall be deferred from induction under this title (sections 451 to 471a of this Appendix) until after completion or termination of the course of instruction and so long as he continues in a regular or reserve status upon being commissioned, but shall not be exempt from registration. Such persons, except those persons who have previously completed an initial period of military training or an equivalent period of active military training and service, shall be required while enrolled in such programs to complete a period of training equal (as determined under regulations approved by the Secretary of Defense or the Secretary of Transportation with respect to the United States Coast Guard) in duration and type of training to an initial period of military training. There shall be added to the obligated active

-21-

commissioned service of any person who has agreed to perform such obligatory service in return for financial assistance while attending a civilian college under any such training program a period of not to exceed one year. Except as provided in paragraph (5), upon the successful completion by any person of the required course of instruction under any program listed in clause (A) of the first sentence of this paragraph, such person shall be tendered a commission in the appropriate reserve component of the Armed Forces if he is otherwise qualified for such appointment. If, at the time of, or subsequent to, such appointment, the armed force in which such person is commissioned does not require his service on active duty in fulfillment of the obligation undertaken by him in compliance with clause (B) of the first sentence of this paragraph, such person shall be ordered to active duty for training with such armed force in the grade in which he was commissioned for a period of active duty for training of not more than six months (not including duty performed under section 10147 of title 10, United States Code), as determined by the Secretary of the military department concerned to be necessary to qualify such person for a mobilization assignment. Upon being commissioned and assigned to a reserve component, such person shall be required to serve therein, or in a reserve component of any other armed force in which he is later appointed, until the eighth anniversary of the receipt of such commission pursuant to the provisions of this section. So long as such person performs satisfactory service, as determined under regulations prescribed by the Secretary of Defense, he shall be deferred from training and service under the provisions of this Act. If such person fails to perform satisfactory service, and such failure is not excused under regulations prescribed by the Secretary of Defense, his commission may be revoked by the Secretary of the military department concerned.

(2)     In addition to the training programs enumerated in paragraph (1) of this subsection, and under such regulations as the Secretary of Defense (or the Secretary of the Treasury with respect to the United States Coast Guard) may approve, the Secretaries of the military departments and the Secretary of the Treasury are authorized to establish officer candidate programs leading to the commissioning of persons on active duty. Any person heretofore or hereafter enlisted in the Army Reserve, the Naval Reserve, the Marine Corps Reserve, the Air Force Reserve, or the Coast Guard Reserve who thereafter has been or may be commissioned therein upon graduation from an Officers' Candidate School of such Armed Force shall, if not ordered to active duty as a commissioned officer, be deferred from training and service under the provisions of this Act so long as he performs satisfactory service as a commissioned officer in an appropriate unit of the Ready Reserve, as determined under regulations prescribed by the Secretary of the department concerned. If such person fails to perform satisfactory service in such unit, and such failure is not excused under such regulations, his commission may

-22-

be revoked by such Secretary.

(3) Nothing in this subsection shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service of any category or categories of students for such periods of time as he may deem appropriate.

(4) Omitted.

(5) Notwithstanding paragraph (1), upon the successful completion by any person of the required course of instruction under any Reserve Officers' Training Corps program listed in clause (A) of the first sentence of paragraph (1) and subject to the approval of the Secretary of the military department having jurisdiction over him, such person may, without being relieved of his obligation under that sentence, be tendered, and accept, a commission in the National Oceanic and Atmospheric Administration instead of a commission in the appropriate reserve component of the Armed Forces. If he does not serve on active duty as a commissioned officer of the National Oceanic and Atmospheric Administration for at least six years, he shall, upon discharge therefrom, be tendered a commission in the appropriate reserve component of the Armed Forces, if he is otherwise qualified for such appointment, and, in fulfillment of his obligation under the first sentence of paragraph (1), remain a member of a reserve component until the sixth anniversary of the receipt of his commission in the National Oceanic and Atmospheric Administration. While a member of a reserve component he may, in addition to as otherwise provided by law, be ordered to active duty for such period that, when added to the period he served on active duty as a commissioned officer of the National Oceanic and Atmospheric Administration, equals two years.

(e) **[Aviation Cadet Applicants]** Fully qualified and accepted aviation cadet applicants of the Army, Navy, or Air Force who have signed an agreement of service shall, in such numbers as may be designated by the Secretary of Defense, be deferred, during the period covered by the agreement but not to exceed four months, from induction for training and service under this title (sections 451 to 471a of this Appendix) but shall not be exempt from registration.

(f) **[Certain Public Officials]** The Vice President of the United States; the governors of the several States, Territories, and possessions, and all other officials chosen by the voters of the entire State, Territory, or possession; members of the legislative bodies of the United States and of the several States, Territories, and possessions; judges of the courts of record of the United States and of the several States, Territories, possessions, and the District of Columbia shall, while holding such offices, be deferred from training and service under this title (sections 451 to 471a of this Appendix) in the armed forces of the United States.

(g) **[Ministers of Religion; Students Preparing for the Ministry]**

-23-

64

(1)     Regular or duly ordained ministers of religion, as defined in this title (sections 451 to 471a of this Appendix), shall be exempt from training and service, but not from registration, under this title (said sections).

(2)     Students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been preenrolled, shall be deferred from training and service, but not from registration, under this title (sections 451 to 471a of this Appendix). Persons who are or may be deferred under the provisions of this subsection shall remain liable for training and service in the Armed Forces under the provisions of section 4(a) of this Act (section 454(a) of this Appendix) until the thirty-fifth anniversary of the date of their birth. The foregoing sentence shall not be construed to prevent the exemption or continued deferment of such persons if otherwise exempted or deferrable under any other provision of this Act.

(h)     **[Deferment for Occupation, Dependency, Fitness, Extended Liability; Criteria]**

Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons whose employment in industry, agriculture, or other occupations or employment, or whose continued service in an Office (other than an Office described in subsection (f)) under the United States or any State, territory, or possession, or the District of Columbia, or whose activity in study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest: Provided, That no person within any such category shall be deferred except upon the basis of his individual status: Provided further, That persons who are or may be deferred under the provisions of this section shall remain liable for training and service in the Armed Forces under the provisions of section 4(a) of this Act (section 454(a) of this Appendix) until the thirty-fifth anniversary of the date of their birth. This proviso shall not be construed to prevent the continued deferment of such persons if otherwise deferrable under any other provisions of this Act. The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces (1) of any or all categories of persons in a status with respect to persons (other than wives alone, except in cases of extreme hardship) dependent upon them for support which renders their deferment advisable, and (2) of any or all categories of those persons found to be physically, mentally, or morally deficient or defective. For the purpose of determining whether or not the deferment of any person is advisable, because of his status with respect to persons dependent upon him for

-24-

65

support, any payments of allowances which are payable by the United States to the dependents of persons serving in the Armed Forces of the United States shall be taken into consideration, but the fact that such payments of allowances are payable shall not be deemed conclusively to remove the grounds for deferment when the dependency is based upon financial considerations and shall not be deemed to remove the ground for deferment when the dependency is based upon other than financial considerations and cannot be eliminated by financial assistance to the dependents. Except as otherwise provided in this subsection, the President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces of any or all categories of persons who have children, or wives and children, with whom they maintain a bona fide family relationship in their homes. No deferment from such training and service in the Armed Forces shall be made in the case of any individual except upon the basis of the status of such individual. There shall be posted in a conspicuous place at the office of each local board a list setting forth the names and classifications of those persons who have been classified by such local board. The President may, in carrying out the provisions of this title (sections 451 to 471a of this Appendix), recommend criteria for the classification of persons subject to induction under this title (said sections), and to the extent that such action is determined by the President to be consistent with the national interest, recommend that such criteria be administered uniformly throughout the United States whenever practicable; except that no local board, appeal board, or other agency of appeal of the Selective Service System shall be required to postpone or defer any person by reason of his activity in study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors found to be necessary to the maintenance of the national health, safety, or interest solely on the basis of any test, examination, selection system, class standing, or any other means conducted, sponsored, administered, or prepared by any agency or department of the Federal Government, or any private institution, corporation, association, partnership, or individual employed by an agency or department of the Federal Government.

(i)　　**[Postponement of Induction of Students]**

(1)　　Any person who is satisfactorily pursuing a full-time course of instruction at a high school or similar institution of learning and is issued an order for induction shall, upon the facts being presented to the local board, have his induction postponed (A) until the time of his graduation therefrom, or (B) until he attains the twentieth anniversary of his birth, or (C) until he ceases satisfactorily to pursue such course of instruction, whichever is the earliest. Notwithstanding the preceding sentence, any person who attains the twentieth anniversary of his birth after beginning his last academic year of high school shall have his induction postponed until the end of that academic year if and so long as he continues to pursue satisfactorily a full-time course of instruction.

(2)　　Any person who while satisfactorily pursuing a full-time course of instruction at

-25-

a college, university, or similar institution is ordered to report for induction under this title (sections 451 to 471a of this Appendix), shall, upon the appropriate facts being presented to the local board, have his induction postponed (A) until the end of the semester or term, or academic year in the case of his last academic year, or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier.

(j)    **[Conscientious Objectors]** Nothing contained in this title (sections 451 to 471a of this Appendix) shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term "religious training and belief" does not include essentially political, sociological, or philosophical views, or a merely personal moral code. Any person claiming exemption from combatant training and service because of such conscientious objections whose claim is sustained by the local board shall, if he is inducted into the armed forces under this title (said sections), be assigned to noncombatant service as defined by the President, or shall, if he is found to be conscientiously opposed to participation in such noncombatant service, in lieu of such induction, be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) (section 454(b) of this Appendix) such civilian work contributing to the maintenance of the national health, safety, or interest as the Director may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purposes of section 12 of this title (section 462 of this Appendix), to have knowingly failed or neglected to perform a duty required of him under this title (said sections).The Director shall be responsible for finding civilian work for persons exempted from training and service under this subsection and for the placement of such persons in appropriate civilian work contributing to the maintenance of the national health, safety, or interest.

(k)    **[Duration of Exemption or Deferment]** No exception from registration, or exemption or deferment from training and service, under this title (sections 451 to 471a of this Appendix), shall continue after the cause therefor ceases to exist.

(l)    **[Minority Discharges]** Notwithstanding any other provisions of law, no person between the ages of eighteen and twenty-one shall be discharged from service in the armed forces of the United States while this title (sections 451 to 471a of this Appendix) is in effect because such person entered such service without the consent of his parent or guardian.

(m)    **[Moral Standards]** No person shall be relieved from training and service under this title (sections 451 to 471a of this Appendix) by reason of conviction of a criminal offense, except where the offense of which he has been convicted may be punished by death, or by imprisonment for a term exceeding one year.

(n)    **[Appeals; Occupational Deferments]** In the case of any registrant whose principal

-26-

place of employment is located outside the appeal board area in which the local board having jurisdiction over the registrant is located, any occupational deferment made under subsection (h) of this section may, within five days after such deferment is made, be submitted for review and decision to the appeal board having jurisdiction over the area in which is located the principal place of employment of the registrant. Such decision of the appeal board shall be final unless modified or changed by the President, and such decision shall be made public.

(o) **[Surviving Son or Brother]** Except during the period of a war or a national emergency declared by Congress, no person may be inducted for training and service under this title (sections 451 to 471a of this Appendix) unless he volunteers for such induction -

    (1) if the father or the mother or a brother or a sister of such person was killed in action or died in line of duty while serving in the Armed Forces after December 31, 1959, or died subsequent to such date as a result of injuries received or disease incurred in line of duty during such service, or

    (2) during any period of time in which the father or the mother or a brother or a sister of such person is in a captured or missing status as a result of such service.

As used in this subsection, the term "brother" or "sister" means a brother of the whole blood or a sister of the whole blood, as the case may be.

## Sec. 458. Bounties for induction; substitutes; purchase of release

No bounty may be paid to induce any person to be inducted into an armed force. A clothing allowance authorized by law is not a bounty for the purposes of this section. No person liable for training and service under this Act may furnish a substitute for that training or service. No person may be enlisted, inducted, or appointed in an armed force as a substitute for another. No person liable for training and service under section 4 (section 454 of this Appendix) may escape that training and service or be discharged before the end of his period of training and service by paying money or any other valuable thing as consideration for his release from that training and service or liability therefor.

## Sec. 459. Separation from service

(a) **Certificate recording proficiency and merit; physical examination**

Any person inducted into the armed forces under this title (sections 451 to 471a of this Appendix) for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b)

-27-

(section 454(b) of this Appendix) shall be entitled to a certificate to that effect upon the completion of such period of training and service, which shall include a record of any special proficiency or merit attained. In addition, each such person who is inducted into the armed forces under this title (said sections) for training and service shall be given a physical examination at the beginning of such training and service, and upon the completion of his period of training and service under this title (said sections), each such person shall be given another physical examination and, upon his written request, shall be given a statement of physical condition by the Secretary concerned: Provided, That such statement shall not contain any reference to mental or other conditions which in the judgment of the Secretary concerned would prove injurious to the physical or mental health of the person to whom it pertains: Provided further, That, if upon completion of training and service under this title (said sections), such person continues on active duty without an interruption of more than seventy-two hours as a member of the Armed Forces of the United States, a physical examination upon completion of such training and service shall not be required unless it is requested by such person, or the medical authorities of the Armed Force concerned determine that the physical examination is warranted.

(b)  **Right to vote; manner; poll tax**

Any person inducted into the armed forces for training and service under this title (sections 451 to 471a of this Appendix) shall, during the period of such service, be permitted to vote in person or by absentee ballot in any general, special, or primary election occurring in the State of which he is a resident, whether he is within or outside such State at the time of such election, if under the laws of such State he is otherwise entitled so to vote in such election; but nothing in this subsection shall be construed to require granting to any such person a leave of absence or furlough for longer than one day in order to permit him to vote in person in any such election. No person inducted into, or enlisted in, the armed forces for training and service under this title (said sections) shall, during the period of such service, as a condition of voting in any election for President, Vice President, electors for President or Vice President, or for Senator or Member of the House of Representatives, be required to pay any poll tax or other tax or make any other payment to any State or political subdivision thereof.

(c)  **Reports on separated personnel**

The Secretaries of Army, Navy, Air Force, or Transportation shall furnish to the Selective Service System hereafter established a report of separation for each person separated from active duty.

## Sec. 460.  Selective Service System

(a)  **Establishment; construction; appointment of Director; termination and reestablishment of Office of Selective Service Records**

-28-

(1)     There is established in the executive branch of the Government an agency to be known as the Selective Service System, and a Director of Selective Service who shall be the head thereof.

(2)     The Selective Service System shall include a national headquarters, at least one State headquarters in each State, Territory, and possession of the United States, and in the District of Columbia, and the local boards, appeal boards, and other agencies provided for in subsection (b)(3) of this section.

(3)     The Director shall be appointed by the President, by and with the advice and consent of the Senate.

(4)     The functions of the Office of Selective Service Records (established by the Act of March 31, 1947 (sections 321 to 329 of this Appendix)) and of the Director of the Office of Selective Service Records are transferred to the Selective Service System and the Director of Selective Service, respectively. The personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Office of Selective Service Records are transferred to the Selective Service System. The Office of Selective Service Records shall cease to exist upon the taking effect of the provisions of this title (sections 451 to 471a of this Appendix): Provided, That, effective upon the termination of this title (said sections) and notwithstanding such termination in other respects, (A) the said Office of Selective Service Records is reestablished on the same basis and with the same functions as obtained prior to the effective date of this title (June 24, 1948), (B) said reestablished Office shall be responsible for liquidating any other outstanding affairs of the Selective Service System, and (C) the personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Selective Service System shall be transferred to such reestablished Office of Selective Service Records.

(b)     **Administrative provisions**

The President is authorized to undertake the following:

(1)     To prescribe the necessary rules and regulations to carry out the provisions of this title (sections 451 to 471a of this Appendix).

(2)     To appoint, upon recommendation of the respective governor or comparable executive official, a State director of the Selective Service System for each headquarters in each State, Territory, and possession of the United States and for the District of Columbia, who shall represent the governor and be in immediate charge of the state headquarters of the Selective Service System: Provided, That no State director shall serve concurrently in an elected or appointed position of a State or local government; to employ such number of civilians, and, subject to subsection (e), to order to active duty with their consent and to assign to the Selective Service System such officers of the

-29-

selective-service section of the State headquarters and headquarters detachments and such other officers of the federally recognized National Guard of the United States or other armed forces personnel (including personnel of the reserve components thereof), as may be necessary for the administration of the national and of the several State headquarters of the Selective Service System.

(3)    To create and establish within the Selective Service System civilian local boards, civilian appeal boards, and such other civilian agencies, including agencies of appeal, as may be necessary to carry out its functions with respect to the registration, examination, classification, selection, assignment, delivery for induction, and maintenance of records of persons registered under this title (sections 451 to 471a of this Appendix), together with such other duties as may be assigned under this title (said sections): Provided, That no person shall be disqualified from serving as a counselor to registrants, including service as Government appeal agent, because of his membership in a Reserve component of the Armed Forces. He shall create and establish one or more local boards in each county or political subdivision corresponding thereto of each State, territory, and possession of the United States, and in the District of Columbia. The local board and/or its staff shall perform their official duties only within the county or political subdivision corresponding thereto for which the local board is established, or in the case of an intercounty board, within the area for which such board is established, except that the staffs of local boards in more than one county of a State or comparable jurisdiction may be collocated or one staff may serve local boards in more than one county of a State or comparable jurisdiction when such action is approved by the Governor or comparable executive official or officials. Each local board shall consist of three or more members to be appointed by the President from recommendations made by the respective Governors or comparable executive officials. In making such appointments after the date of the enactment of this sentence (Sept. 28, 1971), the President is requested to appoint the membership of each local board so that to the maximum extent practicable it is proportionately representative of the race and national origin of those registrants within its jurisdiction, but no action by any local board shall be declared invalid on the ground that any board failed to conform to any particular quota as to race or national origin. No citizen shall be denied membership on any local board or appeal board on account of sex. After December 31, 1971, no person shall serve on any local board or appeal board who has served on any local board or appeal board for a period of more than 20 years. Notwithstanding any other provision of this paragraph, an intercounty local board consisting of at least one member from each component county or corresponding subdivision may, with the approval of the Governor or comparable executive official or officials, be established for an area not exceeding five counties or political subdivisions corresponding thereto within a State or comparable jurisdiction

-30-

when the President determines, after considering the public interest involved, that the establishment of such local board area will result in a more efficient and economical operation. Any such intercounty local board shall have within its area the same power and jurisdiction as a local board has in its area. A local board may include among its members any citizen otherwise qualified under Presidential regulations, provided he is at least eighteen years of age. No member of any local board shall be a member of the Armed Forces of the United States, but each member of any local board shall be a civilian who is a citizen of the United States residing in the county or political subdivision corresponding thereto in which such local board has jurisdiction, and each intercounty local board shall have at least one member from each county or political subdivision corresponding thereto included within the intercounty local board area. Such local boards, or separate panels thereof each consisting of three or more members, shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title (said sections), of all individuals within the jurisdiction of such local boards. The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. There shall be not less than one appeal board located within the area of each Federal judicial district in the United States and within each Territory and possession of the United States, and such additional separate panels thereof, as may be prescribed by the President. Appeal boards within the Selective Service System shall be composed of civilians who are citizens of the United States and who are not members of the armed forces. The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. The President, upon appeal or upon his own motion, shall have power to determine all claims or questions with respect to inclusion for, or exemption or deferment from training and service under this title (said sections), and the determination of the President shall be final. No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title (section 462 of this Appendix), after the registrant has responded either affirmatively or negatively to an order to report for induction or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: Provided, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. No person who is a civilian officer, member, agent, or employee of the Office of Selective Service Records or the Selective Service System, or of any local board or appeal

-31-

board or other agency of such Officer or system, shall be excepted from registration or deferred or exempted from training and service, as provided for in this title (said sections), by reason of his status as such civilian officer, member, agent, or employee.

(4)    To appoint, and to fix, in accordance with the provisions of chapter 51 and subchapter III of chapter 53 of title 5, United States Code, relating to classification and General Schedule pay rates, the basic pay of such officers, agents, and employees as he may deem necessary to carry out the provisions of this title (sections 451 to 471a of this Appendix), however, any officer of the armed forces or any officer or employee of any department or agency of the United States who may be assigned or detailed to any office or position to carry out the provisions of this title (said sections) (except to offices or positions on local boards or appeal boards established or created pursuant to section 10(b)(3) (subsection (b)(3) of this section)) may serve in and perform the functions of such office or position without loss of or prejudice to his status as such officer in the armed forces or as such officer or employee in any department or agency of the United States.

(5)    To utilize the services of any or all departments and any and all officers or agents of the United States, and to accept the services of all officers and agents of the several States, Territories, and possessions, and subdivisions thereof, and the District of Columbia, and of private welfare organizations, in the execution of this title (sections 451 to 471a of this Appendix).

(6)    To purchase such printing, binding, and blank-book work from public, commercial, or private printing establishments or binderies upon orders placed by the Public Printer or upon waivers issued in accordance with section 12 of the Printing Act approved January 12, 1895, as amended (44 U.S.C. 504), and to obtain by purchase, loan, or gift such equipment and supplies for the Selective Service System, as he may deem necessary to carry out the provisions of this title (sections 451 to 471a of this Appendix), with or without advertising or formal contract.

(7)    To prescribe eligibility, rules, and regulations governing the release for service in the armed forces, or for any other special service established pursuant to this title (sections 451 to 471a of this Appendix), of any person convicted of a violation of any of the provisions of this title (said sections).

(8)    Subject to the availability of funds appropriated for such purpose, to procure such space as he may deem necessary to carry out the provisions of this title (sections 451 to 471a of this Appendix) and Public Law 26, Eightieth Congress, approved March 31, 1947 (sections 321 to 329 of this Appendix), by lease pursuant to existing statutes, except that the provisions of the Act of June 30, 1932 (47 Stat. 412), as amended by section 15 of the Act of March 3, 1933 (47 Stat. 1517) (40 U.S.C. 278a), shall not apply to any lease entered into under the authority of this title (said sections).

-32-

(9)     Subject to the availability of funds appropriated for such purposes, to determine the location of such additional temporary installations as he may deem essential; to utilize and enlarge such existing installations; to construct, install, and equip, and to complete the construction, installation, and equipment of such buildings, structures, utilities, and appurtenances (including the necessary grading and removal, repair or remodeling of existing structures and installations), as may be necessary to carry out the provisions of this title (sections 451 to 471a of this Appendix); and, in order to accomplish the purpose of this title (said sections), to acquire lands, and rights pertaining thereto, or other interests therein, for temporary use thereof, by donation or lease, and to prosecute construction thereon prior to the approval of the title (said sections) by the Attorney General as required by section 355, Revised Statutes, as amended (40 U.S.C. 255).

(10)   Subject to the availability of funds appropriated for such purposes, to utilize, in order to provide and furnish such services as may be deemed necessary or expedient to accomplish the purposes of this title (sections 451 to 471a of this Appendix), such personnel of the armed forces and of Reserve components thereof with their consent, and such civilian personnel, as may be necessary. For the purposes of this title (said sections), the provisions of section 14 of the Federal Employees' Pay Act of 1946 (Public Law 390, Seventy-ninth Congress) with respect to the maximum limitations as to the number of civilian employees shall not be applicable to the Department of the Army, the Department of the Navy, or the Department of the Air Force.

(c)     **Delegation of President's authority**

The President is authorized to delegate any authority vested in him under this title (sections 451 to 471a of this Appendix), and to provide for the subdelegation of any such authority.

(d)     **Acceptance of gifts and voluntary services**

In the administration of this title (sections 451 to 471a of this Appendix), gifts of supplies, equipment, and voluntary services may be accepted.

(e)     **Assignment of armed forces personnel**

The total number of armed forces personnel assigned to the Selective Service System under subsection (b)(2) at any time may not be less than the number of such personnel determined by the Director of Selective Service to be necessary, but not to exceed 745 persons, except that the President may assign additional armed forces personnel to the Selective Service System during a time of war or a national emergency declared by Congress or the President.

(f)     **Settlement of travel claims, etc.**

The Director is authorized to make final settlement of individual claims, for amounts not exceeding $500, for travel and other expenses of uncompensated personnel of the Office of Selective Service Records, or the Selective Service System, incurred

-33-

74

while in the performance of official duties, without regard to other provisions of law governing the travel of civilian employees of the Federal Government.

(g)    **Reports to Congress**

The Director of Selective Service shall submit to the Congress annually a written report covering the operation of the Selective Service System and such report shall include, by States, information as to the number of persons registered under this Act; the number of persons inducted in to the military service under this Act; and the number of deferments granted under this Act and the basis for such deferments; and such other specific kinds of information as the Congress may from time to time request.

(h)    **Maintenance of System after institution of all volunteer program for meeting manpower needs**

The Selective Service system shall be maintained as an active standby organization, with -

(1) a complete registration and classification structure capable of immediate operation in the event of a national emergency (including a structure for registration and classification of persons qualified for practice or employment in a health care occupation essential to the maintenance of the Armed Forces), and

(2) personnel adequate to reinstitute immediately the full operation of the System, including military reservists who are trained to operate such System and who can be ordered to active duty for such purpose in the event of a national emergency.

### Sec. 461.    Emergency medical care

Under such rules and regulations as may be prescribed by the President, funds available to carry out the provisions of this title (sections 451 to 471a of this Appendix) shall also be available for the payment of actual and reasonable expenses of emergency medical care, including hospitalization, of registrants who suffer illness or injury, and the transportation and burial of the remains of registrants who suffer death, while acting under orders issued under the provisions of this title (said sections), but such burial expenses shall not exceed the maximum that the Secretary of Veterans Affairs may pay under the provisions of section 2302(a) of title 38, United States Code, in any one case.

### Sec. 462.    Offenses and penalties

(a)    **[Imprisonment and/or Fine]** Any member of the Selective Service System or any other person charged as herein provided with the duty of carrying out any of the

-34-

provisions of this title (sections 451 to 471a of this Appendix), or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty, and any person charged with such duty, or having and exercising any authority under said title (said sections), rules, regulations, or directions who shall knowingly make, or be a party to the making, of any false, improper, or incorrect registration, classification, physical or mental examination, deferment, induction, enrollment, or muster, and any person who shall knowingly make, or be a party to the making, of any false statement or certificate regarding or bearing upon a classification or in support of any request for a particular classification, for service under the provisions of this title (said sections), or rules, regulations, or directions made pursuant thereto, or who otherwise evades or refuses registration or service in the armed forces or any of the requirements of this title (said sections), *or who knowingly counsels, aids, or abets another* to refuse or evade registration or service in the armed forces or any of the requirements of this title (said sections), or of said rules, regulations, or directions, or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title (said sections), or rules, regulations, or directions made pursuant to this title (said sections), or any person or persons who shall knowingly hinder or interfere or attempt to do so in any way, by force or violence or otherwise, with the administration of this title (said sections) or the rules or regulations made pursuant thereto, or who conspires to commit any one or more of such offenses, shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment [Fine increased to $250,00 by 18 U.S.C. 3571(b)(3)], or if subject to military or naval law may be tried by court martial, and, on conviction, shall suffer such punishment as a court martial may direct. No person shall be tried by court martial in any case arising under this title (said sections) unless such person has been actually inducted for the training and service prescribed under this title (said sections) or unless he is subject to trial by court martial under laws in force prior to the enactment of this title (June 24, 1948).

(b)   **[Registration Certificate, Alterations, False Identification]** Any person (1) who knowingly transfers or delivers to another, for the purpose of aiding or abetting the making of any false identification or representation, any registration certificate, alien's certificate of nonresidence, or any other certificate issued pursuant to or prescribed by the provisions of this title (sections 451 to 471a of this Appendix), or rules or regulations promulgated hereunder; or (2) who, with intent that it be used for any purpose of false identification or representation, has in his possession any such certificate not duly issued to him; or (3) who forges, alters, knowingly destroys, knowingly mutilates, or in any manner changes any such certificate or any notation duly and validly inscribed thereon; or (4) who, with intent that it be used for any purpose of false identification or representation, photographs, prints, or in any manner makes or executes any engraving, photograph, print, or impression in the likeness of any such certificate, or any colorable imitation thereof; or (5) who has in

-35-

his possession any certificate purporting to be a certificate issued pursuant to this title (said sections), or rules and regulations promulgated hereunder, which he knows to be falsely made, reproduced, forged, counterfeited, or altered; or (6) who knowingly violates or evades any of the provisions of this title (said sections) or rules and regulations promulgated pursuant thereto relating to the issuance, transfer, or possession of such certificate, shall, upon conviction, be fined not to exceed $10,000 or be imprisoned for not more than five years, or both. Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of any certificate not duly issued to him, such possession shall be deemed sufficient evidence to establish an intent to use such certificate for purposes of false identification or representation, unless the defendant explains such possession to the satisfaction of the jury.

(c) **[Prosecutions]** The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so.

(d) **[Statute of Limitations]** No person shall be prosecuted, tried, or punished for evading, neglecting, or refusing to perform the duty of registering imposed by section 3 of this title (section 453 of this Appendix) unless the indictment is found within five years next after the last day before such person attains the age of twenty-six, or within five years next after the last day before such person does perform his duty to register, whichever shall first occur.

(e) **[HHS Records]** The President may require the Secretary of Health and Human Services to furnish to the Director, from records available to the Secretary, the following information with respect to individuals who are members of any group of individuals required by a proclamation of the President under section 3 (section 453 of this Appendix) to present themselves for and submit to registration under such section: name, date of birth, social security account number, and address. Information furnished to the Director by the Secretary under this subsection shall be used only for the purpose of the enforcement of this Act.

(f) **[Student Financial Aid and the Registration Requirement]**

(1) Except as provided in subsection (g), any person who is required under section 3 (section 453 of this Appendix) to present himself for and submit to registration under such section and fails to do so in accordance with any proclamation issued under such section, or in accordance with any rule or regulation issued under such section, shall be ineligible for any form of assistance or benefit provided under title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq.; 42 U.S.C. 2751 et seq.).

(2) In order to receive any grant, loan, or work assistance under title IV of the Higher Education Act of 1965 (20 U.S.C. 1070 et seq. (and 42 U.S.C. 2751 et seq.)), a person who is required under section 3 (section 453 of this Appendix) to present himself for and submit to registration under such section

-36-

shall file with the institution of higher education which the person intends to attend, or is attending, a statement of compliance with section 3 and regulations issued thereunder.

(3)    The Secretary of Education, in agreement with the Director, shall prescribe methods for verifying such statements of compliance filed pursuant to paragraph (2). Such methods may include requiring institutions of higher education to provide a list to the Secretary of Education or to the Director of persons who have submitted such statements of compliance.

(4)    The Secretary of Education, in consultation with the Director, shall issue regulations to implement the requirements of this subsection. Such regulations shall provide that any person to whom the Secretary of Education proposes to deny assistance or benefits under title IV (20 U.S.C. 1070 et seq.; 42 U.S.C. 2751 et seq.) for failure to meet the registration requirements of section 3 (section 453 of this Appendix) and regulations issued thereunder shall be given notice of the proposed denial and shall have a suitable period (of not less than thirty days) after such notice to provide the Secretary with information and materials establishing that he has complied with the registration requirement under section 3. Such regulations shall also provide that the Secretary may afford such person an opportunity for a hearing to establish his compliance or for any other purpose.

(g)    **[Knowing and Willful Failure to Register]** A person may *not* be denied a right, privilege, or benefit under Federal law by reason of failure to present himself for and submit to registration under section 3 (section 453 of this Appendix) *if* -

(1)    the requirement for the person to so register has terminated or become inapplicable to the person; and

(2)    the person shows by a preponderance of the evidence that the failure of the person to register was not a knowing and willful failure to register.

## Sec. 463.    Nonapplicability of certain laws

(a)    Nothing in sections 203, 205, or 207 of title 18 of the United States Code, or in the second sentence of subsection (a) of section 9 of the Act of August 2, 1939 (53 Stat. 1148), entitled "An Act to prevent pernicious political activities", as amended, shall be deemed to apply to any person because of his appointment under authority of this title (sections 451 to 471a of this Appendix) or the regulations made pursuant thereto as an uncompensated official of the Selective Service System, or as an individual to conduct hearings on appeals of persons claiming exemption from combatant or noncombatant training because of conscientious objections, or as a member of the National Selective Service Appeal Board.

(b)    All functions performed under this title (sections 451 to 471a of this Appendix) shall be excluded from the operation of the Administrative Procedure Act (60 Stat. 237) (5 U.S.C. 551 et seq. and 701 et seq.) except as to the requirements of section 3 of

-37-

such Act (5 U.S.C. 552). Notwithstanding the foregoing sentence, no regulation issued under this Act shall become effective until the expiration of thirty days following the date on which such regulation has been published in the Federal Register. After the publication of any regulation and prior to the date on which such regulation becomes effective, any person shall be given an opportunity to submit his views to the Director on such regulation, but no formal hearing shall be required on any such regulation. The requirements of this subsection may be waived by the President in the case of any regulation if he (1) determines that compliance with such requirements would materially impair the national defense, and (2) gives public notice to that effect at the time such regulation is issued.

(c)      In computing the lump-sum payments made to Air Force reserve officers under the provisions of section 2 of the Act of June 16, 1936, as amended and to reserve officers of the Navy or to their beneficiaries under section 12 of the Act of August 4, 1942, as amended, no credit shall be allowed for any period of active service performed from the effective date of this title (June 24, 1948) to the date on which this title (sections 451 to 471a of this Appendix) shall cease to be effective. Each such lumpsum payment shall be prorated for a fractional part of a year of active service in the case of any reserve officer subject to the provisions of either such section, if such reserve officer performs continuous active service for one or more years (inclusive of such service performed during the period in which this title (said sections) is effective) and such active service includes a fractional part of a year immediately prior to the effective date of this title (June 24, 1948), or immediately following the date on which this title (said sections) shall cease to be effective, or both.

### Sec. 464.      Soldiers' and Sailors' Civil Relief Act as applicable

Notwithstanding the provisions of section 604 of the Act of October 17, 1940 (54 Stat. 1191) (section 584 of this Appendix), and the provisions of section 4 of the Act of July 25, 1947 (Public Law 239, Eightieth Congress) (section 584 note of this Appendix), all of the provisions of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (sections 501 to 593 of this Appendix), including specifically article IV thereof (sections 540 to 548 of this Appendix), shall be applicable to all persons in the armed forces of the United States, including all persons inducted into the armed forces pursuant to this title (sections 451 to 471a of this Appendix) or the Public Health Service, until such time as the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (sections 501 to 593 of this Appendix) is repealed or otherwise terminated by subsequent Act of the Congress: Provided, That, with respect to persons inducted into the armed forces while this title (said sections) is in effect, wherever under any section or provision of the Soldiers' and Sailors' Civil Relief Act of 1940, as amended (sections 501 to 593 of this Appendix) a proceeding, remedy, privilege, stay, limitation, accounting, or other transaction has been authorized or provided with respect to military service performed while such Act is in force, such section or provision

-38-

shall be deemed to continue in full force and effect so long as may be necessary to the exercise or enjoyment of such proceeding, remedy, privilege, stay, limitation, accounting, or other transaction.

**Sec. 465.  Notice of requirements of Act; voluntary enlistments unaffected**

(a)  Every person shall be deemed to have notice of the requirements of this title (sections 451 to 471a of this Appendix) upon publication by the President of a proclamation or other public notice fixing a time for any registration under section 3 (section 453 of this Appendix).

(b)  It shall be the duty of every registrant to keep his local board informed as to his current address and changes in status as required by such rules and regulations as may be prescribed by the President.

(c)  If any provision of this title (sections 451 to 471a of this Appendix), or the application thereof to any person or circumstance, is held invalid, the remainder of the title (said sections), and the application of such provision to other persons or circumstances, shall not be affected thereby.

(d)  Except as provided in section 4(c) (section 454(c) of this Appendix), nothing contained in this title (sections 451 to 471a of this Appendix) shall be construed to repeal, amend, or suspend the laws now in force authorizing voluntary enlistment or reenlistment in the Armed Forces of the United States, including the reserve components thereof, except that no person shall be accepted for enlistment after he has been issued an order to report for induction unless authorized by the Director and the Secretary of Defense and except that, whenever the Congress or the President has declared that the national interest is imperiled, voluntary enlistment or reenlistment in such forces, and their reserve components, may be suspended by the President to such extent as he may deem necessary in the interest of national defense.

(e)  In order to assist the Armed Forces in recruiting individuals for voluntary service in the Armed Forces, the Director shall, upon the request of the Secretary of Defense or the Secretary of Transportation, furnish to the Secretary the names and addresses of individuals registered under this Act. Names and addresses furnished pursuant to the preceding sentence may be used by the Secretary of Defense or Secretary of Transportation only for recruiting purposes.

**Sec. 466.  Definitions**

When used in this title (sections 451 to 471a of this Appendix) -

(a)  The term "between the ages of eighteen and twenty-six" shall refer to men who have attained the eighteenth anniversary of the day of their birth and who have not attained the twenty-sixth anniversary of the day of their birth; and other terms designating different age groups shall be construed in a similar manner.

-39-

(b)   The term "United States", when used in a geographical sense, shall be deemed to mean the several States, the District of Columbia, Puerto Rico, the Virgin Islands, and Guam.

(c)   The term "armed forces" shall be deemed to include the Army, the Navy, the Marine Corps, the Air Force, and the Coast Guard.

(d)   The term "district court of the United States" shall be deemed to include the courts of the United States for the Territories and possessions of the United States.

(e)   The term "local board" shall be deemed to include an intercounty local board in the case of any registrant who is subject to the jurisdiction of an intercounty local board.

(f)   The term "Director" shall be deemed to mean the Director of the Selective Service System.

(g)   (1) The term "duly ordained minister of religion" means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

(2) The term "regular minister of religion" means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

(3) The term "regular or duly ordained minister of religion" does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a bona fide vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization.

(h)   The term "organized unit", when used with respect to a reserve component, shall be deemed to mean a unit in which the members thereof are required satisfactorily to participate in scheduled drills and training periods as prescribed by the Secretary of Defense.

(i)   The term "reserve components of the armed forces" shall, unless the context otherwise requires, be deemed to include the federally recognized National Guard of the United States, the federally recognized Air National Guard of the United States, the Officers' Reserve Corps, the Regular Army Reserve, the Air Force Reserve, the

-40-

Enlisted Reserve Corps, the Naval Reserve, the Marine Corps Reserve, and the Coast Guard Reserve, and shall include, in addition to the foregoing, the Public Health Service Reserve when serving with the armed forces.

### Sec. 467. Repeals; appropriations; termination date

(a)    Except as provided in this title (sections 451 to 471a of this Appendix) all laws or any parts of laws in conflict with the provisions of the title (said sections) are repealed to the extent of such conflict.

(b)    There are authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, such sums as may be necessary to carry out the provisions of this title (sections 451 to 471a of this Appendix). All funds appropriated for the administrative expenses of the National Security Training Commission shall be appropriated directly to the Commission and all funds appropriated to pay the expenses of training carried out by the military departments designated by the Commission shall be appropriated directly to the Department of Defense.

(c)    Notwithstanding any other provisions of this title (sections 451 to 471a of this Appendix), no person shall be inducted for training and service in the Armed Forces after July 1, 1973, except persons now or hereafter deferred under section 6 of this title (section 456 of this Appendix) after the basis for such deferment ceases to exist.

### Sec. 468.    Utilization of industry

(a)    **Placement of orders; Congressional action: notification of committees of certain proposed payment orders, resolution of disapproval, continuity of session, computation of period; "small business" defined -**

Whenever the President after consultation with and receiving advice from the National Security Resources Board determines that it is in the interest of the national security for the Government to obtain prompt delivery of any articles or materials the procurement of which has been authorized by the Congress exclusively for the use of the armed forces of the United States, or for the use of the Atomic Energy Commission, he is authorized, through the head of any Government agency, to place with any person operating a plant, mine, or other facility capable of producing such articles or materials an order for such quantity of such articles or materials as the President deems appropriate, except that no order which requires payments thereunder in excess of $25,000,000 shall be placed with any person unless the Committees on Armed Services of the Senate and the House of Representatives have been notified in writing of such proposed order and 60 days of continuous session of Congress have expired following the date on which such notice was transmitted to such Committees and neither House of Congress has adopted, within

-41-

such 60-day period, a resolution disapproving such order. For purposes of the preceding sentence, the continuity of a session of Congress is broken only by an adjournment of the Congress sine die, and the days on which either House is not in session because of an adjournment of more than 3 days to a day certain are excluded in the computation of such 60-day period. Any person with whom an order is placed pursuant to the provisions of this section shall be advised that such order is placed pursuant to the provisions of this section. Under any such program of national procurement, the President shall recognize the valid claim of American small business to participate in such contracts, in such manufactures, and in such distribution of materials, and small business shall be granted a fair share of the orders placed, exclusively for the use of the armed forces or for other Federal agencies now or hereafter designated in this section. For the purposes of this section, a business enterprise shall be determined to be "small business" if (1) its position in the trade or industry of which it is a part is not dominant, (2) the number of its employees does not exceed 500, and (3) it is independently owned and operated.

(b) **Precedence of Government placed orders**

It shall be the duty of any person with whom an order is placed pursuant to the provisions of subsection (a), (1) to give such order such precedence with respect to all other orders (Government or private) theretofore or thereafter placed with such person as the President may prescribe, and (2) to fill such order within the period of time prescribed by the President or as soon thereafter as possible.

(c) **Failure to give precedence; Government possession**

In case any person with whom an order is placed pursuant to the provisions of subsection (a) of this section refuses or fails -

(1) to give such order such precedence with respect to all other orders (Government or private) theretofore or thereafter placed with such person as the President may have prescribed;

(2) to fill such order within the period of time prescribed by the President or as soon thereafter as possible as determined by the President;

(3) to produce the kind or quality of articles or materials ordered; or

(4) to furnish the quantity, kind, and quality of articles or materials ordered at such price as shall be negotiated between such person and the Government agency concerned; or in the event of failure to negotiate a price, to furnish the quantity, kind, and quality of articles or materials ordered at such price as he may subsequently be determined to be entitled to receive under subsection (d);

the President is authorized to take immediate possession of any plant, mine, or other facility of such person and to operate it, through any Government agency, for the production of such articles or materials as may be required by the Government.

-42-

(d)     **Payment of compensation by United States**

Fair and just compensation shall be paid by the United States (1) for any articles or materials furnished pursuant to an order placed under subsection (a) of this section, or (2) as rental for any plant, mine, or other facility of which possession is taken under subsection (c).

(e)     **Application of Federal and State laws governing employees**

Nothing contained in this section shall be deemed to render inapplicable to any plant, mine, or facility of which possession is taken pursuant to subsection (c) any State or Federal laws concerning the health, safety, security, or employment standards of employees.

(f)     **Penalties**

Any person, or any officer of any person as defined in this section, who willfully fails or refuses to carry out any duty imposed upon him by subsection (b) of this section shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not more than three years, or by a fine of not more than $50,000, or by both such imprisonment and fine.

(g)     **"Person" and "Government agency" defined**

(1)     As used in this section -

(A) The term "person" means any individual, firm, company, association, corporation, or other form of business organization.

(B) The term "Government agency" means any department, agency, independent establishment, or corporation in the Executive branch of the United States Government.

(2)     For the purposes of this section, a plant, mine, or other facility shall be deemed capable of producing any articles or materials if it is then producing or furnishing such articles or materials or if the President after consultation with and receiving advice from the National Security Resources Board determines that it can be readily converted to the production or furnishing of such articles or materials.

(h)     **Rules and regulations governing steel industry; mandatory**

The President is empowered, through the Secretary of Defense, to require all producers of steel in the United States to make available, to individuals, firms, associations, companies, corporations, or organized manufacturing industries having orders for steel products or steel materials required by the armed forces, such percentages of the steel production of such producers, in equal proportion deemed necessary for the expeditious execution of orders for such products or materials. Compliance with such requirement shall be obligatory on all such producers of steel and such requirement shall take precedence over all orders and contracts theretofore placed with such producers. If any such producer of steel or the

-43-

responsible head or heads thereof refuses to comply with such requirement, the President, through the Secretary of Defense, is authorized to take immediate possession of the plant or plants of such producer and, through the appropriate branch, bureau, or department of the armed forces, to insure compliance with such requirement. Any such producer of steel or the responsible head or heads thereof refusing to comply with such requirement shall be deemed guilty of a felony and upon conviction thereof shall be punished by imprisonment for not more than three years and a fine not exceeding $50,000.

### Sec. 469.    Savings provision

Nothing in this title (sections 451 to 471a of this Appendix) shall be deemed to amend any provision of the National Security Act of 1947 (61 Stat. 495).

### Sec. 470.    Effective date

This title (sections 451 to 471a of this Appendix) shall become effective immediately; except that unless the President, or the Congress by concurrent resolution, declares a national emergency after the date of enactment of this Act (June 24, 1948), no person shall be inducted or ordered into active service without his consent under this title (said sections) within ninety days after the date of its enactment.

### Sec. 471.    Authority of President to order Reserve components to active service; release from active duty; retention of unit organizations and equipment

Until July 1, 1953, and subject to the limitations imposed by section 2 of the Selective Service Act of 1948, as amended (section 452 of this Appendix), the President shall be authorized to order into the active military or naval service of the United States for a period of not to exceed twenty-four consecutive months, with or without their consent, any or all members and units of any or all Reserve components of the Armed Forces of the United States and retired personnel of the Regular Armed Forces. Unless he is sooner released under regulations prescribed by the Secretary of the military department concerned, any member of the inactive or volunteer reserve who served on active duty for a period of 12 months or more in any branch of the Armed Forces between the period December 7, 1941, and September 2, 1945, inclusive, who is now or may hereafter be ordered to active duty pursuant to this section, shall upon completion of 17 or more months of active duty since June 25, 1950, if he makes application therefor to the Secretary of the branch of service in which he is serving, be released from active duty and shall not thereafter be ordered to active duty for periods in excess of 30 days without his consent except in time of war or national emergency hereafter declared by the Congress: Provided, That the foregoing shall not apply to any member of the inactive or volunteer reserve ordered to active duty whose rating or specialty is found by the Secretary of the military department concerned to be critical and whose release to inactive duty prior to the period for which he was ordered to

-44-

active duty would impair the efficiency of the military department concerned.

The President may retain the unit organizations and the equipment thereof, exclusive of the individual members thereof, in the active Federal service for a total period of five consecutive years, and upon being relieved by the appropriate Secretary from active Federal service, National Guard, or Air National Guard units, shall, insofar as practicable, be returned to their National Guard or Air National Guard status in their respective States, Territories, the District of Columbia, and Puerto Rico, with pertinent records, colors, histories, trophies, and other historical impedimenta.

### Sec. 471a.    Procedural rights

(a)    It is hereby declared to be the purpose of this section to guarantee to each registrant asserting a claim before a local or appeal board, a fair hearing consistent with the informal and expeditious processing which is required by selective service cases.

(b)    Pursuant to such rules and regulations as the President may prescribe -

    (1)    Each registrant shall be afforded the opportunity to appear in person before the local or any appeal board of the Selective Service System to testify and present evidence regarding his status.

    (2)    Subject to reasonable limitations on the number of witnesses and the total time allotted to each registrant, each registrant shall have the right to present witnesses on his behalf before the local board.

    (3)    A quorum of any local board or appeal board shall be present during the registrant's personal appearance.

    (4)    In the event of a decision adverse to the claim of a registrant, the local or appeal board making such decision shall, upon request, furnish to such registrant a brief written statement of the reasons for its decision.

### Sec. 472. Period of increased service applicable to all personnel

Wherever in this amendatory Act the period of active service for any category of persons is increased, such increased period of service shall be applicable to all persons in such category serving on active duty in the Armed Forces on the date of the enactment of this amendatory Act (June 19, 1951).

### Sec. 473. Regulations governing liquor sales; penalties

Subject to section 2683(c) of title 10, United States Code, the Secretary of Defense

-45-

86

is authorized to make such regulations as he may deem to be appropriate governing the sale, consumption, possession of or traffic in beer, wine, or any other intoxicating liquors to or by members of the Armed Forces or the National Security Training Corps at or near any camp, station, post, or other place primarily occupied by members of the Armed Forces or the National Security Training Corps. Any person, corporation, partnership, or association who knowingly violates the regulations which may be made hereunder shall, unless otherwise punishable under the Uniform Code of Military Justice, be deemed guilty of a misdemeanor and be punished by a fine of not more than $1,000 or imprisonment for not more than twelve months, or both.

-46-