**No. 24-7746**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————

NATIONAL COALITION FOR MEN, et al.,

Plaintiffs-Appellants,

v.

SELECTIVE SERVICE SYSTEM, et al.,

Defendants-Appellees.

————————————

On Appeal from the United States District Court
for the Central District of California

————————————

**BRIEF FOR APPELLEES**

————————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

BILAL A. ESSAYLI
*United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM
SIMON C. BREWER
*Attorneys, Appellate Staff*
*Civil Division, Room 7529*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 616-5367*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

PERTINENT STATUTES AND REGULATIONS................................ 1

STATEMENT OF THE CASE ............................................................. 1

    A.    Statutory Background ............................................. 1

    B.    Factual Background and Prior Proceedings................ 5

    C.    Previous *NCFM* Litigation.......................................... 6

SUMMARY OF ARGUMENT ............................................................ 8

STANDARD OF REVIEW .................................................................. 9

ARGUMENT ...................................................................................... 9

I.    Plaintiffs fail to establish Article III standing........................... 9

II.    Plaintiffs' merits claim is foreclosed by binding Supreme Court
precedent........................................................................... 11

CONCLUSION .................................................................................. 16

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                        **Page(s)**

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................. 9

*Elgin v. U.S. Dep't of the Treasury,*
641 F.3d 6 (1st Cir. 2011) ..................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ............................................................... 11

*LA All. for Human Rights v. County of Los Angeles,*
14 F.4th 947 (9th Cir. 2021) ................................................. 11

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................... 10

*Mallory v. Norfolk S. Ry. Co.,*
600 U.S. 122 (2023) ............................................................... 12

*Meland v. Weber,*
2 F.4th 838 (9th Cir. 2021) ................................................... 9

*National Coal. for Men v. Selective Serv. Sys.:*
No. 2:13-cv-02391, 2013 WL 12096510 (C.D. Cal. July 29, 2013) ............................ 6
640 F. App'x 664 (9th Cir. 2016) ................................................ 6, 7
No. 2:13-cv-02391, 2016 WL 11605246 (C.D. Cal. Nov. 9, 2016) ............................ 7

*National Coal. for Men v. Selective Serv. Sys.:*
355 F. Supp. 3d 568 (S.D. Tex. 2019) ..................................... 7
969 F.3d 546 (5th Cir. 2020),
*cert. denied*, 141 S. Ct. 1815 (2021) ...................................... 6, 7, 13, 14
141 S. Ct. 1815 (2021) ..................................................... 7, 13, 15

*Newman v. Wengler,*
790 F.3d 876 (9th Cir. 2015) ................................................. 13

*Retail Dig. Network, LLC v. Prieto,*
861 F.3d 839 (9th Cir. 2017) ................................................. 12

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ......................................................... 1, 2, 3, 8, 12, 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................. 9

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) ................................................. 10

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................. 9

*United States v. Carrillo-Lopez*,
   68 F.4th 1133 (9th Cir. 2023),
   *cert. denied*, 144 S. Ct. 703 (2024) ...................................... 15

*Wilson v. Lynch*,
   835 F.3d 1083 (9th Cir. 2016) ............................................... 9

**Statutes:**

Military Selective Service Act:
   50 U.S.C. § 3801 .................................................................. 2
   50 U.S.C. § 3802(a) .............................................................. 2
   50 U.S.C. § 3806 .................................................................. 2
   50 U.S.C. § 3809(a)(1) .......................................................... 2
   50 U.S.C. § 3818(b) .............................................................. 2

Pub. L. No. 102-190, § 531,
   105 Stat. 1290, 1365 (1991) ................................................. 3

Pub. L. No. 103-160, § 541,
   107 Stat. 1547, 1659 (1993),
   *repealing* 10 U.S.C. § 6015 (1988) ...................................... 3

Pub. L. No. 114-328, §§ 551-557,
   130 Stat. 2000, 2130-37 (2016) ............................................ 4

Pub. L. No. 118-159, 138 Stat. 1773 (2024) ................................ 14

5 U.S.C. § 3328(a) ........................................................................ 10

28 U.S.C. § 1291 ............................................................................ 1

28 U.S.C. § 1331 ............................................................................ 1

28 U.S.C. § 1343 ............................................................................ 1

**Regulatory Materials:**

32 C.F.R. subtitle B, ch. XVI ...................................................... 2
    32 C.F.R. § 1621.1(a) ................................................................ 2

Proclamation No. 4771,
    45 Fed. Reg. 45,247 (July 2, 1980) ....................................... 2, 10

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ............................................................ 1

**Legislative Materials:**

A Bill to Repeal the Military Selective Service Act, S. 4881,
    118th Cong. (2024) ..................................................................... 5

James M. Inhofe National Defense Authorization Act for
    Fiscal Year 2023, S. 4543, 117th Cong., § 521(d) (2022) ............ 5

Military Selective Service Repeal Act of 2023, H.R. 6100,
    118th Cong. (2023) ..................................................................... 5

National Defense Authorization Act for Fiscal Year 2025, S. 4638,
    118th Cong., § 598A(a)(2) (2024) ....................................... 5, 14

S. Rep. No. 118-188 (2024) ......................................................... 14

iv

**Other Authorities:**

Kristy N. Kamarck, Cong. Research Serv., R42075,
  *Women in Combat: Issues for Congress* (Dec. 13, 2016),
  https://perma.cc/2BKW-JMH3.................................................................3-4, 4

Memorandum from the Sec'y of Def. to the Sec'ys of the
  Military Dep'ts (Mar. 30, 2025),
  https://perma.cc/NV9C-LLLN .................................................................. 4

Nat'l Comm'n on Military, Nat'l, & Pub. Serv., *Inspired to Serve* (Mar. 2020),
  https://perma.cc/2Z86-FPBB.................................................................. 4

Selective Serv. Sys., *Update Your Information*,
  https://perma.cc/932M-V82A ................................................................ 10

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.  2-ER-89.  This Court has jurisdiction under 28 U.S.C. § 1291.  The district court entered a final judgment dismissing the case on December 9, 2024, *see* 1-ER-2, and plaintiffs filed a notice of appeal on December 19, 2024, *see* 2-ER-14–15.  That notice was timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

## STATEMENT OF THE ISSUES

In preparation for a potential military draft, Congress has required nearly all men to register with the Selective Service System when they turn 18 years old.  The Supreme Court upheld this statute in *Rostker v. Goldberg*, 453 U.S. 57 (1981), rejecting a claim that Congress unconstitutionally excluded women from the registration requirement.  The questions presented are whether plaintiffs have alleged a sufficient basis for Article III standing, and, if so, whether the district court correctly held that it was bound to follow *Rostker*'s holding.  *See* 1-ER-8–12.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.     Statutory Background

**1.**  The Military Selective Service Act (MSSA) has long required all male citizens between the ages of 18 and 26, with some exceptions, to register with a federal agency

known as the Selective Service System. 50 U.S.C. §§ 3802(a), 3809(a)(1); *see also id.*

§ 3806 (exemptions and deferments). These registrations must be in accordance with

the MSSA's implementing regulations. *See id.* § 3802(a). *See generally* 32 C.F.R. subtitle

B, ch. XVI. Registrants must apprise the Selective Service of changes in their

registration information, such as their permanent and mailing addresses, until the year

in which they turn 26 years old. *See* 50 U.S.C. § 3818(b); 32 C.F.R. § 1621.1(a);

Proclamation No. 4771, 45 Fed. Reg. 45,247 (July 2, 1980). The purpose of

registration "is to facilitate any eventual conscription" into the Armed Forces in the

event of a military draft. *Rostker v. Goldberg*, 453 U.S. 57, 59 (1981); *see also* 50 U.S.C.

§ 3801. The MSSA does not require women to register. 50 U.S.C. § 3802(a).

In *Rostker*, the Supreme Court considered whether the MSSA's male-only

registration requirement amounts to unconstitutional sex discrimination under the

Fifth Amendment. 453 U.S. at 59. As the Court's opinion explained, "Congress

considered the question" whether to permit the registration of women

"at great length" and heard "extensive testimony and evidence," including through

multiple rounds of hearings, floor debate, and committee proceedings, before

deciding to retain the male-only requirement. *Id.* at 61, 72. The Court found

constitutional significance in the fact that Congress had not acted "unthinkingly" or

"reflexively," *id.* at 72 (quotation marks omitted), as well as the fact that "the

Constitution itself requires . . . deference to congressional choice" when military

affairs are involved, *id.* at 67, and ultimately concluded that "Congress acted well

2

within its constitutional authority when it authorized the registration of men, and not women," under the MSSA, *id.* at 83.

In reaching that conclusion in *Rostker*, the Supreme Court recognized that "the purpose of registration is to develop a pool of potential combat troops," and the Court observed that statutory prohibitions and military policy restricted the ability of women to serve in combat. 453 U.S. at 77-79. The Court also explained that while some women might nonetheless suitably be inducted into the Armed Forces, "Congress simply did not consider it worth the added burdens of including women in draft and registration plans." *Id.* at 81. And the Court credited Congress's expressed concern that training might be "needlessly burdened" if it included a number of female recruits who would ultimately be found to not be combat ready. *Id.* (quotation marks omitted). The Court held that, given those Congressional determinations, men and women were not "similarly situated for purposes of a draft or registration for a draft." *Id.* at 78.

**2.** Since *Rostker*, there have been a number of changes regarding women's service in combat positions. In 1991, Congress repealed restrictions on women flying combat aircraft. Pub. L. No. 102-190, § 531, 105 Stat. 1290, 1365 (1991). In 1993, Congress eliminated the ban on women serving on combat ships. Pub. L. No. 103-160, § 541, 107 Stat. 1547, 1659 (1993), *repealing* 10 U.S.C. § 6015 (1988). And in 2013, the Department of Defense announced that it would soon rescind its policy excluding women from combat roles. *See* Kristy N. Kamarck, Cong. Research Serv.,

3

R42075, *Women in Combat: Issues for Congress* 13 (Dec. 13, 2016),

https://perma.cc/2BKW-JMH3.  In 2015, the Secretary of Defense further

announced that all combat position would be open to women who meet the relevant

occupational standards.  *Id.* at 15.[1]

Following these changes, Congress convened a "National Commission on

Military, National, and Public Service" in part to study the issue of women's

registration for the Selective Service and provide recommendations.  *See* Pub. L. No.

114-328, §§ 551-557, 130 Stat. 2000, 2130-37 (2016).  In 2020, the Commission issued

a final report expressing its belief that "all Americans, men and women, should be

required to register for Selective Service."  *See* Nat'l Comm'n on Military, Nat'l, &

Pub. Serv., *Inspired to Serve* 111 (Mar. 2020), https://perma.cc/2Z86-FPBB.  The

Commission therefore recommended that "Congress amend the MSSA to eliminate

male-only registration."  *Id.* at 139.  The Commission also noted that extending the

registration requirement might trigger the need to reassess existing policies on

"deferments, exemptions, and criteria governing eligibility for induction" in the event

that the draft were reintroduced, and it "recognize[d] that Congress and the

President" might wish to address those issues.  *Id.* at 112.

---

[1] While this appeal was pending, the Secretary of Defense issued a
memorandum requiring that "[a]ll entry-level and sustained physical fitness
requirements within combat arms positions" be "sex-neutral."  Memorandum from
the Sec'y of Def. to the Sec'ys of the Military Dep'ts 2 (Mar. 30, 2025),
https://perma.cc/NV9C-LLLN.  That memorandum does not bear on the issues
presented in this appeal.

Since the Commission's report was issued, Congress has continued to consider whether, or how, to amend the MSSA. For example, in recent years the Senate Armed Services Committee reported favorably several bills that included provisions that would have included women in the Selective Service's registration requirements. *See, e.g.*, National Defense Authorization Act for Fiscal Year 2025, S. 4638, 118th Cong., § 598A(a)(2) (2024); James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, S. 4543, 117th Cong., § 521(d) (2022). Other proposed legislation would have eliminated the Selective Service registration requirement altogether. *See, e.g.*, A Bill to Repeal the Military Selective Service Act, S. 4881, 118th Cong. (2024); Military Selective Service Repeal Act of 2023, H.R. 6100, 118th Cong. (2023). None of these proposals has been enacted into law.

### B.    Factual Background and Prior Proceedings

Plaintiffs are five individuals and the National Coalition for Men (NCFM). 2-ER-90–94. Each individual plaintiff is a man between 18 and 26 years old, and therefore each is subject to the MSSA's registration requirements. 2-ER-92–94. Each has "recently registered" with the Selective Service as required. 2-ER-92–94. The individual plaintiffs are members of NCFM. 2-ER-91.

Plaintiffs' one-count complaint asserts that the Selective Service registration requirement violates the equal protection component of the Fifth Amendment. 2-ER-103–104. The complaint seeks only prospective (injunctive and declaratory) relief. 2-ER-104–105.

The district court dismissed the complaint for failure to state a claim. 1-ER-2–12. The court concluded that the individual plaintiffs have alleged Article III standing because the MSSA "required them to register with the Selective Service and they are under a continuing obligation to promptly notify the Selective Service of any changes to their registration information." 1-ER-9. It further held that NCFM has associational standing because the individual plaintiffs, who are members of NCFM, have standing. 1-ER-10. Turning to the merits, the court held that *Rostker* foreclosed plaintiffs' claim. 1-ER-11–12. It explained that "[t]hough 'the factual underpinning of the controlling Supreme Court decision has changed,' that does not grant this Court 'license to disregard or overrule that precedent.'" 1-ER-11 (quoting *National Coal. for Men v. Selective Serv. Sys.*, 969 F.3d 546, 549-50 (5th Cir. 2020) (per curiam)). The district court therefore dismissed the case with prejudice. 1-ER-12.

## C. Previous *NCFM* Litigation

In a prior case filed in 2013, NCFM and a different individual plaintiff asserted substantially the same Fifth Amendment claim against the Selective Service System. *See National Coal. for Men v. Selective Serv. Sys.*, No. 2:13-cv-02391 (C.D. Cal.). The district court dismissed the complaint for lack of ripeness, *see* 2013 WL 12096510 (C.D. Cal. July 29, 2013), but this Court reversed in a memorandum disposition, 640 F. App'x 664 (9th Cir. 2016). This Court also indicated that the "alleged equality injuries" were redressable, as required to satisfy the third prong of Article III standing, because a court could either "extend[] the burden of registration to women" or

"strik[e] down the requirement for men." *Id.* at 666. The Court did not decide whether the plaintiffs had adequately alleged an injury in fact, as also required to establish standing, or express any view on the merits. *Id.* ("We remand for the district court to consider the questions of standing other than the one we have addressed, and, if it has jurisdiction, the merits of the case.").

On remand, the district court concluded that only the individual plaintiff had adequately alleged Article III standing. 2016 WL 11605246, at *2 (C.D. Cal. Nov. 9, 2016). It then transferred the case to the Southern District of Texas, where that individual plaintiff resided. *Id.* at *3. Following additional proceedings, the Texas district court ultimately granted summary judgment for the plaintiffs, holding that registration requirement violated the Fifth Amendment. 355 F. Supp. 3d 568 (S.D. Tex. 2019).

The Fifth Circuit reversed, recognizing that *Rostker* was "controlling" unless and until the Supreme Court overruled it. 969 F.3d at 549. The Supreme Court then denied the plaintiffs' petition for a writ of certiorari. 141 S. Ct. 1815 (2021). Several Justices observed that "[t]he role of women in the military has changed dramatically since [*Rostker*]." *Id.* at 1816 (Sotomayor, J., respecting the denial of certiorari). But those Justices explained the Supreme Court's "longstanding deference to Congress on matters of national defense and military affairs cautions against granting review while Congress actively weighs the issue." *Id.*

7

## SUMMARY OF ARGUMENT

**I.**     Plaintiffs have not demonstrated that they possess Article III standing to challenge the Selective Service registration requirement. To seek prospective relief, a plaintiff must be suffering an ongoing or imminent injury in fact. But here, the individual plaintiffs have already registered for the Selective Service. And the individual plaintiffs do not show that it is likely—rather than speculative—that they will be required to update their registration information in the future. NCFM's sole claim to Article III standing depends on its members'—specifically, the named individual plaintiffs'—ability to demonstrate their own standing. As a result, plaintiffs have failed to meet their burden to demonstrate standing to seek an injunction or a declaratory judgment.

**II.**     Even if plaintiffs had demonstrated standing, their claim is foreclosed on the merits by binding Supreme Court precedent. In *Rostker v. Goldberg*, 453 U.S. 57 (1981), the Supreme Court considered and rejected a challenge to the Selective Service registration requirement under the Fifth Amendment. The Supreme Court has not revisited or overruled that holding since then. And plaintiffs' assertions that various facts have changed since *Rostker* provides no basis for deviating from the Supreme Court's decision. The district court therefore correctly held that it was bound by *Rostker* to reject plaintiffs' Fifth Amendment claim.

## STANDARD OF REVIEW

This Court reviews de novo an order dismissing a complaint for failure to state a claim. *Wilson v. Lynch*, 835 F.3d 1083, 1090 (9th Cir. 2016).

## ARGUMENT

## I. Plaintiffs fail to establish Article III standing.

As an initial matter, plaintiffs have failed to demonstrate that they have an ongoing or imminent injury sufficient to confer Article III standing. "To confer standing under Article III, an injury in fact must affect the plaintiff in a personal and individual way that is beyond the psychological consequence presumably produced by observation of conduct with which one disagrees[.]" *Meland v. Weber*, 2 F.4th 838, 844 (9th Cir. 2021) (citation and quotation marks omitted). A past injury is insufficient to demonstrate standing to seek prospective relief. *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (rejecting a plaintiff's reliance on "past injury rather than imminent future injury that is sought to be enjoined").

Plaintiffs cannot make this showing. Each individual plaintiff in this suit has registered for the Selective Service. 2-ER-92–93. Although the obligation to register may constitute an injury in fact, that plaintiffs have already registered at most demonstrates a one-time harm that occurred in the past. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983). The district court's conclusion that these plaintiffs have standing to seek

9

injunctive and declaratory relief because of the MSSA's requirement "to register with the Selective Service" was therefore mistaken.  1-ER-9.[2]

The district court also cited plaintiffs' ongoing obligation to provide certain updated information to the Selective Service System, such as changes in address.  1-ER-9.  But a registrant's obligation to provide an updated address ends at the start of the year in which he turns 26 years old.  *See* Proclamation No. 4771, 45 Fed. Reg. 45,247 (July 2, 1980); Selective Serv. Sys., *Update Your Information*, https://perma.cc/932M-V82A.  No plaintiff has alleged facts suggesting that he intends to move or is likely to move before that time or that he is otherwise likely to need to update his registration information.  2-ER-92–94.  It is therefore speculative that the MSSA and its implementing regulations will obligate plaintiffs to provide any updated information to the Selective Service.  *See, e.g.*, *Stringer v. Whitley*, 942 F.3d 715, 722 (5th Cir. 2019) (holding that the plaintiffs lacked standing to challenge a system for updating voter registrations following an address change because "no [p]laintiff has expressed any intention to move in the future"); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions—without any description of

---

[2] Because the individual plaintiffs here have already registered, they are not similarly situated to the plaintiff in *Valame v. Trump*, No. 24-369 (9th Cir. filed Jan. 23, 2024).  The government has not contested on appeal that plaintiff's standing to challenge the registration requirement, as he has not fulfilled his legal obligation to register with the Selective Service.  *See* Brief for Appellees at 9-10, 13 n.4, *Valame*, No. 24-369 (June 10, 2024), Dkt. No. 28.  That omission renders him ineligible for federal Executive Branch employment, among other things.  *See* 5 U.S.C. § 3328(a).

concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Without any allegations that they will likely be subject to such requirements, plaintiffs have not alleged an ongoing or imminent injury in fact.

Because no individual plaintiff has standing, NCFM also lacks associational standing. Associational standing requires the plaintiff association to demonstrate that "its members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). NCFM's claim to associational standing is predicated on the individual plaintiffs' standing. *See* 1-ER-10; 2-ER-91. Because the individual plaintiffs lack standing, so too does NCFM. *See, e.g.*, *LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 960 (9th Cir. 2021) ("Because LA Alliance has not shown that its members would otherwise have standing to sue in their own right, it lacks associational standing . . . ."). This Court should therefore affirm on the grounds that dismissal was appropriate for lack of subject-matter jurisdiction.

## II. Plaintiffs' merits claim is foreclosed by binding Supreme Court precedent.

Even if plaintiffs could demonstrate standing, the district court correctly dismissed this case. Binding Supreme Court precedent establishes that the selective service registration requirement does not violate the Fifth Amendment. There is no

11

basis for disregarding that holding, which squarely forecloses plaintiffs' merits arguments.

**A.** Plaintiffs' sole claim is that the male-only registration requirement is unlawful sex discrimination under the Fifth Amendment. Opening Br. 23-24; 2-ER-103–104. The Supreme Court has already rejected that very claim in *Rostker v. Goldberg*, 453 U.S. 57 (1981). In *Rostker*, the Supreme Court explained that the question presented was whether the MSSA "violates the Fifth Amendment" by requiring the registration of men and not women. *Id.* at 59. The Court specifically held "that Congress acted well within its constitutional authority when it authorized the registration of men, and not women," and reversed the contrary judgment of the district court. *Id.* at 83.

Unless and until the Supreme Court overrules *Rostker*, this Court remains bound by that holding. *See, e.g., Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023) ("If a precedent of this Court has direct application in a case . . . a lower court should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quotation marks omitted)); *Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 849 (9th Cir. 2017) (en banc) (similar).

Plaintiffs acknowledge the holding of *Rostker*, but they contend that its "rationale . . . no longer exists" given factual developments regarding women's participation in the Armed Services. Opening Br. 24; *see also id.* at 11, 17, 30, 32-33. That assertion provides no basis for disregarding *Rostker*'s holding. As this Court has

made clear, federal courts of appeals cannot "engage in anticipatory overruling of Supreme Court precedent" even if "factual developments may appear to have significantly undermined the rationale for an earlier holding." *Newman v. Wengler*, 790 F.3d 876, 880 (9th Cir. 2015) (per curiam) (alteration and quotation marks omitted).

Indeed, the Fifth Circuit recognized as much in the prior litigation in which NCFM advanced substantially similar arguments. *See National Coalition for Men v. Selective Serv. Sys.*, 969 F.3d 546 (5th Cir. 2020) (per curiam), *cert. denied*, 141 S. Ct. 1815 (2021). The Fifth Circuit held that, although certain facts had changed since *Rostker*, the plaintiffs' sex-based equal protection claims were nevertheless foreclosed because federal courts could not "ignore a decision from the Supreme Court unless directed to do so by the Court itself." *Id.* at 549 (quotation marks omitted). The Supreme Court denied certiorari shortly thereafter. *National Coal. for Men v. Selective Serv. Sys.*, 141 S. Ct. 1815 (2021). In a statement concurring in the denial of certiorari, Justice Sotomayor, joined by Justices Breyer and Kavanaugh, acknowledged that "[t]he role of women in the military has changed dramatically since [*Rostker*]," but explained that denial was still appropriate in light of Congress's continued consideration of the report of the National Commission on Military, National, and Public Service regarding the future of the Selective Service System. *Id.* at 1816 (Sotomayor, J., respecting the denial of certiorari). But even given those factual developments, no Justice suggested that the Fifth Circuit erred in following *Rostker*'s holding.

13

It is therefore appropriate to reject plaintiff's sex-based equal protection challenge under *Rostker* without further inquiry. *See Elgin v. U.S. Dep't of the Treasury*, 641 F.3d 6, 24 (1st Cir. 2011) (Stahl, J., concurring) ("[I]t would not be for this court to determine what, if any, impact these [factual] developments had on the continued vitality of *Rostker*, a task left solely to the Supreme Court."); *National Coal. for Men*, 969 F.3d at 547 (similar).

**B.**  Plaintiffs spend a significant portion of their brief discussing statements by certain Members of Congress opposing potential changes to the registration requirement. *See* Opening Br. 6-7, 25-27.  To the extent they are relevant, those statements do not demonstrate that plaintiffs are entitled to any relief.

Following the National Commission on Military, National, and Public Service's publication of its final report, Congress continues to consider the issue of women's registration.  For example, a bill considered by the recently concluded 118th Congress would have provided for the automatic registration of all United States citizens, including women. *See* National Defense Authorization Act for Fiscal Year 2025, S. 4638, 118th Cong., § 598A(a)(2) (2024).  That provision was specifically considered by the Senate Committee on Armed Services, which reported it favorably. *See* S. Rep. No. 118-188, at 140 (2024) (noting the Committee's recommendation); *id.* at 602 (noting the Committee's roll call vote on that provision).  While the version of that bill that Congress ultimately enacted did not amend the registration requirement, *see generally* Pub. L. No. 118-159, 138 Stat. 1773 (2024), it cannot be said that Congress

14

has abandoned its consideration of the issue.  *Cf. Rostker*, 453 U.S. at 72 ("The question of registering women . . . was extensively considered by Congress in hearings, floor debate, and in committee.").

Against that backdrop, statements by individual Members certainly do not demonstrate that Congress has maintained the current registration requirement "for arbitrary reasons wholly unrelated to any important government interest," as plaintiffs contend.  Opening Br. 26.  As an initial matter, accepting that argument would improperly ascribe to the whole Congress statements made by individual Members.  *See United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023) ("[T]the statements of a handful of lawmakers may not be probative of the intent of the legislature as a whole."), *cert. denied*, 144 S. Ct. 703 (2024).  That aside, the fact that some Members oppose changes to the registration requirement merely underscores that the legislative branch continues to "actively weigh[] the issue" as different Members debate their varying positions and perspectives.  *National Coal. for Men*, 141 S. Ct. at 1816 (Sotomayor, J., respecting the denial of certiorari).  The democratic process is ongoing.  Accordingly, the Court should decline plaintiffs' invitation to disregard binding Supreme Court precedent and instead allow the political branches an adequate opportunity to consider these complicated questions before interfering in a matter that is within their constitutional discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

BILAL A. ESSAYLI
   *United States Attorney*

MICHAEL S. RAAB
THOMAS PULHAM

 *s/ Simon C. Brewer*
_____
SIMON C. BREWER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7529*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 616-5367*
   *Simon.C.Brewer@usdoj.gov*

April 2025

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellees state that they know of the following related case pending in this Court: *Valame v. Trump*, No. 24-369 (9th Cir.). *Valame* also raises the issue whether the MSSA violates the Fifth Amendment.

*s/ Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3671 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Simon C. Brewer*
Simon C. Brewer

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using ACMS.  Service will be accomplished ACMS.


*s/ Simon C. Brewer*
Simon C. Brewer

**ADDENDUM**

## TABLE OF CONTENTS

50 U.S.C. § 3802 ................................................................................. A1

50 U.S.C. § 3809 ................................................................................. A2

32 C.F.R. § 1615.4 .............................................................................. A3

32 C.F.R. § 1621.1 .............................................................................. A4

**50 U.S.C. § 3802**

**§ 3802. Registration**

(a) Except as otherwise provided in this chapter, it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder. The provisions of this section shall not be applicable to any alien lawfully admitted to the United States as a nonimmigrant under section 1101(a)(15) of Title 8, for so long as he continues to maintain a lawful nonimmigrant status in the United States.

(b) Regulations prescribed pursuant to subsection (a) may require that persons presenting themselves for and submitting to registration under this section provide, as part of such registration, such identifying information (including date of birth, address, and social security account number) as such regulations may prescribe.

A1

**50 U.S.C. § 3809**

**§ 3809. Selective Service System**

(a) Establishment; construction; appointment of Director; termination and reestablishment of Office of Selective Service Records

(1) There is established in the executive branch of the Government an agency to be known as the Selective Service System, and a Director of Selective Service who shall be the head thereof.

(2) The Selective Service System shall include a national headquarters, at least one State headquarters in each State, Territory, and possession of the United States, and in the District of Columbia, and the local boards, appeal boards, and other agencies provided for in subsection (b)(3) of this section.

(3) The Director shall be appointed by the President.

(4) The functions of the Office of Selective Service Records (established by the Act of March 31, 1947) and of the Director of the Office of Selective Service Records are transferred to the Selective Service System and the Director of Selective Service, respectively. The personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Office of Selective Service Records are transferred to the Selective Service System. The Office of Selective Service Records shall cease to exist upon the taking effect of the provisions of this chapter: *Provided*, That, effective upon the termination of this chapter and notwithstanding such termination in other respects, (A) the said Office of Selective Service Records is reestablished on the same basis and with the same functions as obtained prior to June 24, 1948, (B) said reestablished Office shall be responsible for liquidating any other outstanding affairs of the Selective Service System, and (C) the personnel, property, records, and unexpended balances (available or to be made available) of appropriations, allocations, and other funds of the Selective Service System shall be transferred to such reestablished Office of Selective Service Records.

(b) Administrative provisions

The President is authorized to undertake the following:

(1) To prescribe the necessary rules and regulations to carry out the provisions of this chapter.

. . . .

A2

**32 C.F.R. § 1615.4**

**§ 1615.4. Duty of persons required to register.**

A person required by selective service law to register has the duty:

(a) To complete the registration process by a method prescribed by the Director of Selective Service and to record thereon his name, date of birth, sex, Social Security Account Number (SSAN), current mailing address, permanent residence, telephone number, date signed, and signature, if requested; and

(b) To submit for inspection, upon request, evidence of his identity to a person authorized to accept the registration information. Evidence of identity may be a birth certificate, motor vehicle operator's license, student's identification card, United States Passport, or a similar document.

**32 C.F.R. § 1621.1**

**§ 1621.1. Reporting by registrants of their current status.**

Until otherwise notified by the Director of Selective Service, it is the duty of every registrant who registered after July 1, 1980:

(a) To notify the System within 10 days of any change in the following items of information that he provided on his registration form: name, current mailing address and permanent residence address; and

(b) To submit to the classifying authority, all information concerning his status within 10 days after the date on which the classifying authority mails him a request therefor, or within such longer period as may be fixed by the classifying authority; and

(c) Who has a postponement of induction, or has been deferred or exempted from training and service, to notify the System immediately of any changes in facts or circumstances relating to the postponement, deferment or exemption; and

(d) Who has a postponement of examination, to notify the System immediately of any changes in facts or circumstances relating to the postponement.

A4